FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF LA

2009 MAR -4  PM 5: 02

LORETTA G. WHYTE
CLERK

## UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| DIVERSIFIED FOODS AND SEASONINGS, INC. | * CIVIL ACTION |
| | * |
| | * NO. **09 - 2998** |
| Plaintiff, | * |
| | * SECTION " "; MAG. " " |
| VERSUS | * |
| | * JUDGE **SECT. C MAG. 3** |
| AFC ENTERPRISES, INC. | * MAGISTRATE |
| | * |
| Defendant. | * |
| | * |
| | * |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## COMPLAINT FOR DECLARATORY JUDGMENT AND
## PRELIMINARY AND PERMANENT INJUNCTION

Diversified Foods and Seasonings, Inc. brings this action, seeking a declaratory

judgment and injunctive relief, respectfully representing as follows:

### THE PARTIES

1.

Plaintiff, Diversified Foods and Seasonings, Inc. ("Diversified" or "Plaintiff") is a

Louisiana corporation with its principal place of business in the Eastern District of Louisiana.

Fee $350
Process ____
X  Dktd ____
____ CtRmDep ____
____ Doc. No. ____

- 1 -

967098v.4

2.

Defendant, AFC Enterprises, Inc. ("AFC" or "Defendant") is a Minnesota corporation with its principal place of business in the Northern District of Georgia.

## JURISDICTION AND VENUE

3.

This Court has diversity jurisdiction over this dispute pursuant to 28 U.S.C. § 1332, because this is an action between citizens of different states and because the value of declaratory relief sought, the value of Plaintiff's rights to be protected, and the extent of the injury to be prevented exceeds the amount of $75,000, exclusive of interest and costs.

4.

Venue for this action is proper in this District pursuant to 28 U.S.C. § 1391(a)(2) because a substantial part of the events giving rise to this claim occurred in this judicial district. Further, venue for this action is proper in this District pursuant to 28 U.S.C. § 1391(a)(1) because the Defendant is subject to personal jurisdiction in this judicial district pursuant to Louisiana R.S. 13:3201.

## FACTS

5.

Diversified and AFC are parties to a Supply Contract originally made on March 21, 1989 between New Orleans Spice Company, Inc., the former name of Diversified, and Biscuit Investments, Inc., a predecessor in interest to AFC.

6.

The Supply Contract, which is a 4-page, double-spaced agreement, provides in pertinent part (substituting the names of the current parties):

967098v.4

I.

[Diversified] shall sell to [AFC], or as [AFC] directs, all of the Product required by [AFC], and [AFC] shall purchase its requirements for the consideration hereafter stated.

\* \* \*

IV.

Prices for the Product shall be as quoted or posted from time to time by [Diversified] consistent with past practices, shall be payable C.O.D. or on such other basis as shall be mutually determined, and shall be uniform throughout the Popeyes Famous Fried Chicken and Biscuit system.

\* \* \*

VII.

This Agreement may be amended only by a writing executed by the parties hereto.

\* \* \*

X.

This Agreement shall be construed in accordance with the internal laws of the State of Louisiana.

(*See* Supply Contract, attached as Exhibit A.)

7.

The Supply Contract does not contain any arbitration clause or agreement to arbitrate whatsoever. The Supply Contract does not even mention arbitration.

8.

The Supply Contract contains no further provisions regarding price beyond those in Section IV quoted above.

- 3 -

9.

The Supply Contract contains no provisions requiring either party to disclose the amount of its costs, revenues, or profits to the other.

10.

The Supply Contract was assumed by AFC's predecessor-in-interest in accordance with Sections 365 and 1123(b)(2) of the Bankruptcy Code as part of the Confirmed Plan of Reorganization in the Chapter 11 bankruptcy proceedings captioned *In re Al Copeland Enterprises, Inc.*, No. 91-12575-FM-11, United States Bankruptcy Court, Western District of Texas. (*See* Order Confirming Fourth Amended Plan, entered Oct. 22, 1992, ¶ 14, attached as Exhibit B, Restated Fourth Amended Plan, attached as Exhibit C.)

11.

Subsequently, in a letter dated June 13, 1994 among Diversified, a predecessor-in-interest of AFC (referred to as AFCC or AFC), and others (the "1994 Settlement Agreement"), Diversified and AFC's predecessor-in-interest, among other things, expressly reaffirmed the Supply Contract. (*See* 1994 Settlement Agreement, attached as Exhibit D.)

12.

In a second settlement agreement, this time dated May 29, 1997, among Diversified, AFC, and others (the "1997 Settlement Agreement"), which settled allegations that AFC had misappropriated certain trade secret recipes of Diversified, Diversified and AFC specifically agreed, among other things, that "no defaults" existed under the Supply Contract and that the term of the Supply Contract was extended until March 20, 2029. (*See* 1997 Settlement Agreement, attached as Exhibit E.)

967098v.4

13.

Diversified and AFC are also parties, through their predecessors-in-interest, to an agreement dated July 2, 1979 among various persons relating to certain recipes and formulas and other intellectual property rights (the "Formula Agreement", attached as Exhibit F), an amendment thereto dated March 21, 1989 (the "Amendment to Formula Agreement", attached as Exhibit G), and a second amendment thereto also dated March 21, 1989 (the "Second Amendment to Formula Agreement", attached as Exhibit H), as well as certain other agreements not pertinent to the present action.

14.

On February 17, 2009, AFC filed against Diversified a Demand for Arbitration with the American Arbitration Association in Atlanta, Georgia.  In the Demand for Arbitration, AFC apparently claims that a disclosure document, filed on August 13, 1992, by the Canadian Imperial Bank of Commerce ("CIBC") in a bankruptcy proceeding of a predecessor-in-interest of AFC, somehow amended the Supply Contract and incorporated into it an agreement to arbitrate and certain provisions regarding pricing.  (*See* Demand for Arbitration, attached as Exhibit I.[1])

15.

The disclosure document is entitled Supplemental Disclosure Relating to Plan of Reorganization Proposed by Canadian Imperial Bank of Commerce, as Agent ("CIBC Supplemental Disclosure").  (*See* CIBC Supplemental Disclosure, attached as Exhibit J.)  The CIBC Supplemental Disclosure is not and does not even purport to be an agreement.  The CIBC

---

[1]     The voluminous exhibits to the Demand for Arbitration are not included in Exhibit I since those same exhibits are otherwise attached to this Complaint.

967098v.4

Supplemental Disclosure is not signed by or on behalf of Diversified. The CIBC Supplemental Disclosure does not impose any binding obligations upon Diversified and does not even purport to do so.

16.

The CIBC Supplemental Disclosure does not amend and does not even purport to amend the Supply Contract. The section of the CIBC Supplemental Disclosure on which AFC relies consists of a lengthy "Statement of Intentions" by CIBC about the intentions of AFC (referred to as the New Company) and its management.

17.

With respect to arbitration, the CIBC Supplemental Disclosure states that "if any pricing dispute with Diversified cannot be resolved by the parties themselves, the New Company [AFC] proposes to submit any such dispute to binding arbitration under the auspices of the American Arbitration Association." (Exhibit J at p. 5.) The CIBC Supplemental Disclosure then adds: "Arbitration is proposed as a sign of the New Company's [AFC's] good faith and its determination to keep price disputes from interfering unnecessarily with its relationship with Diversified. If Diversified is prepared to agree to arbitration in principle, then the details of the procedure can be readily resolved." (Exhibit J at p. 5, n. 7.)

18.

Diversified has never agreed to arbitration with AFC, neither in principle nor in detail.

19.

With respect to pricing, the CIBC Supplemental Disclosure, after stating that it is the New Company's "intention" to continue purchasing certain products from Diversified, adds

967098v.4

that "[t]his assumes that Diversified ... will provide high quality products in sufficient quantity and at prices that are fair and reasonable." (Exhibit J at p. 4.) The CIBC Supplemental Disclosure also states that the proposed new management "intends" to monitor the fairness of Diversified's pricing and that it "believes that such efforts should result in prices ... that are fair and reasonable." (*Id.* at p. 5.) These statements about AFC's intentions and beliefs do not even suggest that the provisions of the Supply Contract are being amended.

20.

The CIBC Supplemental Disclosure is a disclosure document filed by CIBC to inform creditors of certain intentions of AFC and its new management and does not amend the terms of the Supply Contract in any way.

21.

Diversified and AFC (directly or though their predecessors-in-interest) have a long history of performance of the Supply Contract. Diversified and AFC have also engaged in extensive litigation on more than one occasion. Throughout this long history, up until the Demand for Arbitration, AFC has never previously asserted that the CIBC Supplemental Disclosure amends the Supply Contract or imposes any obligations on Diversified, or that the Supply Contract (or the CIBC Supplemental Disclosure) includes an actual arbitration agreement or requires Diversified to disclose its costs, revenues, or profits to AFC.

22.

On the same date that AFC filed its Demand for Arbitration, AFC also filed a Complaint for Declaratory Judgment in the United States District Court, Northern District of Georgia, Atlanta Division, No. 1:09-CV-0416. In that action, AFC seeks a declaration of certain rights and obligations of the parties under the Formula Agreement and the Supply Contract

- 7 -

967098v.4

relating to the scope of the products covered thereunder. Diversified avers that it is not subject to personal jurisdiction in the State of Georgia and intends to move to dismiss and/or transfer that action to this Court.

## COUNT ONE: DECLARATORY JUDGMENT

### 23.

Diversified repeats and realleges paragraphs 1-22 as though set forth fully in this Count.

### 24.

Diversified is entitled to a declaratory judgment against AFC regarding two sets of issues: (1) the lack of any arbitration agreement between the parties; and (2) the pricing provisions of the Supply Contract.

### 25.

There is an actual controversy between the parties with respect to each of the matters as to which Diversified seeks a declaratory judgment.

### A. Declaratory Judgment Regarding the Lack of an Arbitration Agreement Between the Parties

### 26.

The Supply Contract does not provide for arbitration or require Diversified to arbitrate any disputes with AFC.

967098v.4

27.

The CIBC Supplemental Disclosure does not amend the Supply Contract. The CIBC Supplemental Disclosure does not require Diversified to arbitrate any disputes with AFC.

28.

There is no arbitration agreement between AFC and Diversified. Diversified is not obligated to arbitrate any disputes with AFC. AFC has no right to proceed with arbitration against Diversified. AFC's Demand for Arbitration was and is not valid.

29.

Diversified is entitled to a declaratory judgment declaring (i) that the Supply Contract does not provide for arbitration or require Diversified to arbitrate any disputes with AFC; (ii) that the CIBC Supplemental Disclosure does not require Diversified to arbitrate any disputes with AFC; and (iii) that AFC has no right to proceed with arbitration against Diversified.

**B.  Declaratory Judgment Regarding Pricing under the Supply Contract**

30.

With respect to pricing, the Supply Contract provides only that "Prices for the Product shall be as quoted or posted from time to time by [Diversified] consistent with past practices, shall be payable C.O.D. or on such other basis as shall be mutually determined, and shall be uniform throughout the Popeyes Famous Fried Chicken and Biscuit system." (Exhibit A at ¶ IV).

31.

The CIBC Supplemental Disclosure does not amend the Supply Contract. The CIBC Supplemental Disclosure does not set any standards that Diversified is required to follow,

967098v.4

or otherwise impose any binding obligations on Diversified, relating to the setting of prices under the Supply Contract.

32.

Neither the Supply Contract nor the CIBC Supplemental Disclosure requires Diversified to disclose its costs, revenues, or profits to AFC.

33.

Diversified has not breached the pricing provisions of the Supply Contract.

34.

Diversified is entitled to a declaratory judgment declaring (i) that the only provisions in the Supply Contract with respect to pricing are set forth in Section IV of the Supply Contract; (ii) that the CIBC Supplemental Disclosure does not set any standards that Diversified is required to follow, or otherwise impose any binding obligations on Diversified, relating to the setting of prices under the Supply Contract; (iv) that Diversified is not required to disclose its costs, revenues, or profits to AFC; and (v) that Diversified has not breached the pricing provisions of the Supply Contract.

**COUNT TWO: INJUNCTIVE RELIEF**

35.

Diversified repeats and realleges paragraphs 1-34 as though set forth fully in this Count.

36.

Diversified is entitled to an injunction against Defendant under applicable law.

37.

- 10 -

Diversified has a substantial likelihood of success on the merits of its claim that AFC has no right to proceed with arbitration proceedings against Diversified, as more fully set forth above.

38.

A failure to enjoin AFC from proceeding with arbitration against Diversified would result in irreparable harm to Diversified in numerous ways, including that Diversified would be forced to defend the arbitration and subject itself to rulings and decisions of an arbitrator before whom Diversified never agreed to arbitrate and that Diversified would be deprived of its right to obtain a just and efficient resolution of its rights and obligations in a court of competent jurisdiction.

39.

There would be no harm to AFC as a result of the issuance of the requested injunctive relief, as AFC has no right to proceed with arbitration against Diversified and the entire arbitration proceeding would be an enormous waste of the parties' time and resources. Any possible harm to AFC is greatly outweighed by the irreparable harm that would result to Diversified as a result of a failure to enjoin the arbitration, as discussed above.

40.

Enjoining AFC from proceeding with the arbitration will not disserve the public interest. On the contrary, it will promote the public interest by upholding Diversified's right not to arbitrate without its consent, and avoiding the unnecessary, improper, and wasteful duplication of dispute resolution proceedings. Any issues that could be resolved in an arbitration are fully capable of resolution by this court.

967098v.4

41.

Diversified need not secure or post any bond as a prerequisite to injunctive relief, or such bond should be minimal.

**PRAYER FOR RELIEF**

**WHEREFORE,** Diversified prays for the following relief in its favor and against the Defendant:

(1)    A declaratory judgment declaring that:

    (a)    the Supply Contract does not provide for arbitration or require Diversified to arbitrate any disputes with AFC;

    (b)    the CIBC Supplemental Disclosure does not require Diversified to arbitrate any disputes with AFC;

    (c)    AFC has no right to proceed with arbitration against Diversified;

    (d)    the only provisions in the Supply Contract with respect to pricing are set forth in Section IV of the Supply Contract;

    (e)    the CIBC Disclosure Statement does not set any standards that Diversified is required to follow, or otherwise impose any binding obligations on Diversified, relating to the setting of prices under the Supply Contract;

    (f)    Diversified is not required to disclose its costs, revenues, or profits to AFC; and

    (g)    Diversified has not breached the pricing provisions of the Supply Contract.

(2)    A preliminary and permanent injunction enjoining AFC and any and all persons or entities acting in concert or participating with AFC, directly or

967098v.4

indirectly, from proceeding with arbitration of any disputes between the AFC and Diversified relating to the Supply Contract; and,

(3)    For all other legal and equitable relief to which Diversified may be entitled.

Dated: March 4, 2009                                      Respectfully submitted,

_____

Phillip A. Wittmann, T.A., 16325
Dorothy H. Wimberly, 18509
Brooke C. Tigchelaar, 32029
STONE PIGMAN WALTHER
    WITTMANN L.L.C.
546 Carondelet Street
New Orleans, Louisiana 70130-3588
Telephone: (504) 581-3200
Facsimile: (504) 596-0843
Attorneys for Diversified Foods and
Seasonings, Inc.

- 13 -

967098v.4