## SUPPLY CONTRACT

This Agreement made this 21st day of March, 1989 by and between New Orleans Spice Company, Inc., a Louisiana corporation ("Spice"), herein represented by its undersigned officer and Biscuit Investments, Inc., a Louisiana corporation ("Biscuit"), herein represented by its undersigned officer,

### W I T N E S S E T H

WHEREAS, Spice, by virtue of a certain agreement dated July 2, 1979, as amended ("Formula Agreement"), has the right to use a certain basic recipe and formula in the preparation of spicy fried chicken commonly known as Popeyes Famous Fried Chicken, any developments or improvements relating to the production of such recipe and formula and any additional recipes for products suitable for use in Popeyes Famous Fried Chicken and Biscuit restaurants ("Popeye Formula");

WHEREAS, the Formula Agreement and the parties' interest therein are more fully described in a certain Amendment of the Formula Agreement, executed of even date herewith by the parties and Alvin C. Copeland;

WHEREAS, Biscuit owns and operates Popeyes Famous Fried Chicken and Biscuits restaurants which specialize in the sale of spicy fried chicken prepared with

batter, spices, and other ingredients prepared with the
Popeye Formula (such batter, spices and other ingredi-
ents, "Product"); and

NOW THEREFORE, the parties for the mutual bene-
fits conferred upon each other herein, the receipt and
adequacy of which are acknowledged, agree that:

I.

Spice shall sell to Biscuit, or as Biscuit
directs, all of the Product required by Biscuit, and
Biscuit shall purchase its requirements for the consider-
ation hereafter stated.

II.

During any month, Spice shall not be obligated
to supply an amount of Product grossly disproportionate
to average amounts customarily supplied for the preceding
twelve month period.

III.

In consultation with Biscuit, Spice shall en-
deavor to estimate the future requirement of Biscuit to
assure maximum compliance herewith.

IV.

Prices for the Product shall be as quoted or
posted from time to time by Spice consistent with past
practices, shall be payable C.O.D. or on such other basis

2

as shall be mutually determined, and shall be uniform throughout the Popeyes Famous Fried Chicken and Biscuit system.

### V.

The term hereof shall be fifteen years. Thereafter, this Agreement may be terminated by the parties' agreement, subject to an accounting for Product already sold but not yet paid for.

### VI.

Without the other party's written consent first obtained, neither party may assign or encumber its rights hereunder; nor may this Agreement be assumed by any other person.

### VII.

This Agreement may be amended only by a writing executed by the parties hereto.

### VIII.

This Agreement establishes no third party beneficiary rights in any persons not parties hereto.

3

IX.

Spice hereby agrees that, upon the merger of Church's Fried Chicken, Inc. ("Church's") and Biscuit becoming effective, Church's shall become the Company hereunder and shall be entitled to all of the rights and benefits of Biscuit hereunder, subject to all of the covenants, duties, obligations, promises and liabilities of Biscuit hereunder.

X.

This Agreement shall be construed in accordance with the internal laws of the State of Louisiana.

Executed at New York, New York on the date first written above.

BISCUIT INVESTMENTS, INC.          NEW ORLEANS SPICE CO., INC.

BY: _____      BY: _____
Its: _____      Its: _____

4

UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

- - - - - - - - - - - - - - - - -X
                             :
In re:                       :      Chapter 11
                             :
AL COPELAND ENTERPRISES, INC.,  :      Case No. 91-12575-FM-11
                             :
          Debtor.        :
- - - - - - - - - - - - - - - - -X

## ORDER CONFIRMING FOURTH AMENDED PLAN OF REORGANIZATION, AS MODIFIED, PROPOSED BY CANADIAN IMPERIAL BANK OF COMMERCE, AS AGENT, AND FIXING BAR DATES FOR FILING ADMINISTRATIVE EXPENSE CLAIMS AND CLAIMS ARISING FROM THE REJECTION OF EXECUTORY CONTRACTS

This matter came before the Court for hearing (the "Confirmation Hearing") on July 27, 1992, on the Fourth Amended Plan of Reorganization proposed by Canadian Imperial Bank of Commerce, as Agent ("CIBC"), with respect to Al Copeland Enterprises, Inc. (the "Debtor") dated July 27, 1992 (the "Fourth Amended Plan"), as modified with respect to Sections 5.05, 6.07(a), 7.01, and 7.02 thereof (the "Modifications", and the Fourth Amended Plan as modified by the Modifications being hereinafter referred to as the "Plan").[1]  The Joint Disclosure Statement, approved by the Court on May 5, 1992, and the Third Amended Plan of Reorganization proposed by CIBC with respect to the Debtor dated May 1, 1992 (the "Third Amended Plan"), along with other materials directed by the Court, having been

---

[1]  Capitalized terms used but not defined in this Order sh⬛ have the meanings ascribed to such terms in the Plan.

transmitted to the Debtors' creditors and equity security holders, the Office of the United States Trustee, the Securities and Exchange Commission, the Internal Revenue Service and all other parties-in-interest who have requested notice; and the Court having considered the evidence and testimony presented at the Confirmation Hearing, the arguments of counsel, the Joint Disclosure Statement and the Exhibits thereto, the Plan, and the objections filed with respect to the Plan; and the Court having entered findings of fact, conclusions of law, and rulings on the record on October 20, 1992; and good and sufficient cause appearing therefor; it is hereby

ORDERED, DECREED, AND ADJUDGED THAT:

1.  Any and all objections to confirmation of the Plan not previously withdrawn be, and the same hereby are, overruled, and all findings of fact, conclusions of law, and rulings entered on the record on October 20, 1992 be, and the same hereby are, incorporated in this Order by reference and made a part hereof.

2.  The Plan, in the form of the Restated Fourth Amended Plan incorporating the Modifications and annexed hereto as Attachment I, be, and the same hereby is, approved and confirmed.

3.  The provisions of the Plan shall bind the Debtor, the New Company, and all creditors and equity security holders of the Debtor, whether or not the respective Claims or Interests of such creditors or equity security holders are impaired under the Plan, whether or not such creditors and equity security holders have accepted the Plan, and whether or not such creditors and equity

security holders have filed proofs of claim or interest or are deemed to have filed proofs of claim of interest.

4. Except as otherwise provided in the Plan or this Order, on and after the Effective Date:

(a) The Debtor is hereby discharged from all debts that arose against it before the date of entry of this Order to the extent provided by 11 U.S.C. § 1141(d). Any judgment at any time obtained, to the extent that such judgment is a determination of liability of the Debtor or the New Company with respect to any discharged debt or claim, whether or not such discharge is waived, is void.

(b) All individuals and entities which have held, currently hold or may hold a debt, Claim, other liability or interest against the Debtor that is discharged upon Confirmation of the Plan and the Effective Date are permanently enjoined from taking any of the following actions on account of such debt, Claim, liability, interest or right: (i) commencing or continuing in any manner any action or other proceeding on account of such debt, Claim, other liability or interest against the Debtor, the New Company, or property which is to be distributed under the Plan, other than to enforce any right to distribution under the Plan; (ii) enforcing, attaching, collecting or recovering in any manner any judgment, award, decree, or order against any property to be distributed to creditors of the Plan, other than as permitted under subparagraph (i)

above; and (iii) creating, perfecting or enforcing any lien or encumbrance against any property to be distributed under the Plan, other than as permitted by the Plan.

(c)    The Debtor, and all entities acting by or through the Debtor, in whole or in part, are permanently enjoined from commencing or continuing in any manner, or otherwise prosecuting, any action or proceeding, whether directly, derivatively or otherwise, on account of or respecting any claim, debt, right, cause of action, or liability that is released or to be released pursuant to the Plan.

The foregoing injunction shall apply to the holder of a debt, Claim or Interest, whether or not a proof of claim was filed or deemed filed, whether such Claim was allowed, whether or not the holder of such Claim accepted the Plan, and whether or not the right to payment was reduced to judgment, liquidated, unliqui-dated, fixed, contingent, matured, unmatured, disputed, undis-puted, legal, equitable, secured, or unsecured.  Any entity injured by any willful violation of this injunction shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages from the willful violator.

5.    The Superpriority Claims, the Acquisition Bank Claims, and the Merrill Lynch Claims are hereby allowed in accordance with, and in the amounts set forth in, the Plan.

6.    The Articles of Incorporation, and the terms of the New Common Stock and of the New Preferred Stock, comply in all

-4-

respects with Section 1123(a)(6) of the Bankruptcy Code and are hereby approved.

7.    (a)   The adoption and filing by the New Company of its Articles of Incorporation are hereby ratified and approved.

(b)   The Debtor is hereby authorized to merge with and into the New Company pursuant to Tex. Bus. Corp. Act arts. 4.14 & 5.01 et seq. and Minn. Stat. §§ 302A.601 et seq.

(c)   In furtherance of the foregoing, and as authorized by Tex. Bus. Corp. Act art. 4.14(B)(2), R. Bruce Layman and Heinz H. Noeding, acting singly or jointly, are hereby designated by this Court as the individuals authorized to sign the plan of merger or exchange and the articles of merger or exchange on behalf of the Debtor.

(d)   Except as specifically set forth in the Plan or this Order, the effectiveness of the merger of the Debtor into the New Company shall be determined exclusively in accordance with the above-cited provisions of Texas and Minnesota law.

8.    (a)   The Debtor, the New Company, and their respective officers, directors, agents, employees, and professionals be, and hereby are, authorized to take all actions necessary for the Debtor to merge with and into the New Company, and to enter into, implement and consummate the contracts, instruments, releases and other agreements or documents created in connection with the Plan or to be executed and delivered pursuant to the Plan, including, but not limited to, the Articles of Incorporation, the New Credit Agreement, and the New Credit Documents.

-5-

(b)  In furtherance of the foregoing, R. Bruce Layman and Heinz H. Noeding, acting singly or jointly, are hereby designated by this Court as the individuals authorized to act, and to execute all such contracts, instruments, releases and other agreements or documents, on behalf of the Debtor, without further act of the board of directors or shareholders of the Debtor.

(c)  All actions required of, and all contracts, instruments, releases and other agreements or documents necessary to be executed by, the New Company in order to consummate the Plan shall be authorized, effected, and executed exclusively in accordance with the requirements of Minnesota law, the Articles of Incorporation, and the resolutions of the shareholders or board of directors of the New Company.

(d)  Without limiting the generality of the foregoing provisions of this paragraph 8, all depositary institutions holding funds or other property of the Debtor, including, without limitation, the First National Bank of Commerce, are hereby authorized and directed (i) to assist and cooperate with CIBC and the New Company in preparing for and effecting the transactions to occur on the Effective Date, and (ii) to honor all instructions of the Debtor (acting by R. Bruce Layman and/or Heinz H. Noeding), CIBC, or the New Company with respect to the disposition of any funds or other property of the Debtor on deposit with them or in their possession.

9.   Pursuant to Section 5.03 of the Plan, not later than ten (10) days after the Effective Date, the Debtor shall execute and deliver to Merrill Lynch stipulations of dismissal with prejudice of the Merrill Lynch Litigation.

10.   Not later than ten (10) days after the Effective Date, the Debtor shall execute and deliver to CIBC a stipulation of dismissal with prejudice of the adversary proceeding pending in this Court and encaptioned Al Copeland Enterprises, Inc. v. Canadian Imperial Bank of Commerce, et al., Adversary Proceeding No. 92-1096-FM.

11.   The Debtor and the holders of all Claims that have accepted the Plan hereby irrevocably release CIBC, the Acquisition Banks, the DIP Banks, and the New Company and each of their respective shareholders, officers, directors, employees, agents and affiliates, in each case from any and all liabilities, claims, suits, actions and demands which may have arisen out of (A) the Acquisition Credit Agreement and all transactions, relationships and dealings relating thereto or contemplated thereunder, (B) the acquisition of Church's Fried Chicken, Inc. by Biscuit Investments, Inc. in 1989, and all related transactions, relationships, and dealings, and (C) any action by any party in connection with the commencement of, or conduct during, the Reorganization Case, whether accrued, absolute, contingent, unliquidated or otherwise, and whether known or unknown which have or may have arisen out of any transaction or any state of facts existing on or prior to the Effective Date;

-7-

provided, however, that for the purposes of the foregoing release, a holder of a Claim shall not be deemed to have accepted the Plan if (Y) such Claim is a Superpriority Claim, an Administrative Claim, or a Tax Claim, or (Z) said acceptance occurs solely by virtue of Section 1126(f) of the Bankruptcy Code.

12.   The Debtor and the holders of all Claims that have accepted the Plan hereby irrevocably release Merrill Lynch and its shareholders, officers, directors, employees, agents and affiliates, from any and all liabilities, claims, suits, actions and demands which may have arisen out of (A) the Bridge Loan Agreement and all transactions, relationships and dealings relating thereto or contemplated thereunder, (B) the acquisition of Church's Fried Chicken, Inc. by Biscuit Investments, Inc. in 1989, and all related transactions, relationships, and dealings, and (C) any action by any party in connection with the commencement of, or conduct during, the Reorganization Case, whether accrued, absolute, contingent, unliquidated or otherwise, and whether known or unknown which have or may have arisen out of any transaction or any state of facts existing on or prior to the Effective Date; provided, however, that for the purposes of the foregoing release, a holder of a Claim shall not be deemed to have accepted the Plan if (Y) such Claim is a Superpriority Claim, an Administrative Claim, or a Tax Claim, or (Z) said acceptance occurs solely by virtue of Section 1126(f) of the Bankruptcy Code.

13. All holders of Claims with respect to whom the releases set forth in paragraphs 11 and 12 of this Order are effective are hereby permanently enjoined from taking any action in violation of the terms of such releases.

14. Pursuant to Section 7.01 of the Plan, the Supply Contract shall be assumed, and assigned by the Debtor to the New Company incident to the merger, in accordance with Sections 365 and 1123(b)(2) of the Bankruptcy Code on, and by virtue of the occurrence of, the Effective Date and the merger.

15. Pursuant to Section 7.02 of the Plan, the Formula Agreement and the Recipe Royalty Agreement shall be assumed, and assigned by the Debtor to the New Company incident to the merger, in accordance with Sections 365 and 1123(b)(2) of the Bankruptcy Code on, and by virtue of the occurrence of, the Effective Date and the merger. This Court specifically declines to rule or determine whether the "Termination Date" (as defined in the Recipe Royalty Agreement) has occurred, or will occur ever or at any particular time in the future, and makes no findings of fact or conclusions of law with respect to that issue, which is expressly reserved for decision after the Effective Date in a forum of appropriate jurisdiction.

16. (a) Pursuant to Section 7.03(a) of the Plan, the Assumed Insider Contracts shall be assumed, and assigned by the Debtor to the New Company incident to the merger, in accordance with Sections 365 and 1123(b)(2) of the Bankruptcy Code on, and by virtue of the occurrence of, the Effective Date and the

merger; provided, however, that such assumption and assignment shall be without prejudice to any right of the Debtor, or of the New Company as successor to the Debtor, to reform any Assumed Insider Contract under applicable nonbankruptcy law.

(b)  Pursuant to Section 7.03(b) of the Plan, the Rejected Insider Contracts shall be rejected in accordance with Sections 365 and 1123(b)(2) of the Bankruptcy Code on, and by virtue of the occurrence of, the Effective Date.  Any Claim under Sections 365(g)(1) and 502(g) of the Bankruptcy Code on account of such rejection shall be filed not later than thirty (30) days after the Effective Date.

17.  (a)  Pursuant to Section 7.04 of the Plan, all Non-Insider Contracts to be assumed thereunder shall be assumed, and assigned by the Debtor to the New Company incident to the merger, in accordance with Sections 365 and 1123(b)(2) of the Bankruptcy Code on, and by virtue of the occurrence of, the Effective Date and the merger.

(b)  Pursuant to Section 7.04(b) of the Plan, all Non-Insider Contracts to be rejected thereunder shall be rejected in accordance with Sections 365 and 1123(b)(2) of the Bankruptcy Code on, and by virtue of the occurrence of, the Effective Date; provided, however, that the Proponents' Schedule of Rejected Executory Contracts and Unexpired Leases filed on July 27, 1992 as contemplated in Section 7.04(b) of the Plan (the "Rejection Schedule") is hereby amended to delete therefrom item U (Lease for Store No. 248 - 1442 Hampton Ave., St. Louis, MO) and item RR

(Lease for Store No. GW 11 - 8402 Broadway, San Antonio, TX); and provided further, that the Rejection Schedule is hereby further amended to add thereto the following leases, of which rejections the Proponents shall send written notice to the landlords not later than the Effective Date: (x) Store No. 110 - 1585 Magazine St., New Orleans, LA (Landlord, Norman George Nastif); (y) Store No. 676 - 8930 North Seventh St., Phoenix, AZ (Landlord, First Interstate Bank of Arizona); and (z) Regional Office #2008, 10415 Landsbury #200, Houston, TX (Landlord, Teachers Retirement System of Texas). Any Claim under Sections 365(g)(1) and 502(g) of the Bankruptcy Code on account of the rejection of any executory contract or unexpired lease shall be filed not later than (i) thirty (30) days after the Effective Date, or (ii) if such rejection is authorized in a separate order of this Court, such other date as may be set forth in such order.

18.    Pursuant to Section 7.05 of the Plan, all contracts entered into or assumed after the Petition Date shall be assigned by the Debtor to the New Company incident to the merger on, and by virtue of the occurrence of, the Effective Date and the merger. The New Company shall commence any proceeding to reform or rescind a contract pursuant to Section 7.05 of the Plan not later than one hundred eighty (180) days after the Effective Date.

19.    (a) The procedures set forth in Sections 6.07 and 7.06 of the Plan for the resolution of Disputed Claims (including Cure Claims and Compensatory Cure Claims) are hereby approved, and the

jurisdiction of this Court is hereby specifically retained for that purpose, subject to the terms of the Plan with respect to the liquidation of Disputed Claims in another forum. Not later than sixty (60) days after the Effective Date, the Debtor and the New Company shall file objections to proofs of claim filed during the period subsequent to the bar date set by the Court and through the Effective Date, and the jurisdiction of the Court is retained for the purpose of the resolution of such claims; provided, however, that the foregoing time limitation shall not apply to proofs of claim filed pursuant to paragraph 16(b), 17(b), or 26 hereof. Except as provided in paragraph 16(b), 17(b), or 26 hereof, any proof of claim filed subsequent to the Effective Date shall be disallowed, null, and void.

(b)   Treatment of the Subordinated Insider Claims in accordance with Section 5.05(a) of the Plan solely by virtue of the identity of the holders thereof and their status as Insiders of the Debtor under the control of Copeland, as provided in Section 5.05(a)(i) of the Plan, is impermissible. CIBC is hereby authorized to commence one or more adversary proceedings against the holders of Subordinated Insider Claims to seek subordination thereof under Section 510(c) of the Bankruptcy Code and in accordance with Section 5.05(a)(ii) of the Plan.

20. In accordance with Section 9.03 of the Plan, the New Company is authorized to prosecute any claims, rights or causes of action that constitute property of the Estate or of the Debtor, and any such prosecution, including the prosecution of

claims in the Copeland Proceedings, is hereby determined to be undertaken for the benefit of the Estate notwithstanding that any recovery may remain with the New Company or be used to repay indebtedness restated or incurred under the New Credit Agreement.

21.   (a)   Pursuant to Section 1146(c) of the Bankruptcy Code, the issuance, transfer, or exchange of any security, or the making, delivery, filing, or recording of any instrument of transfer, under the Plan shall not be taxed under any law imposing a recording tax, stamp tax, transfer tax, or similar tax.

(b)   Without limiting the generality of subparagraph (a) of this paragraph 21, the making, delivery, filing, or recording at any time of any deed, bill of sale, mortgage, deed of trust, assignment, security agreement, financing statement, or other instrument of absolute or collateral transfer required by, or deemed necessary or desirable by the parties to, the merger or the New Credit Documents shall not be so taxed.

(c)   All filing or recording officers, wherever located and by whomever appointed, are hereby directed to accept for filing or recording, and to file or record immediately upon presentation thereof, all such deeds, bills of sale, mortgages, deeds of trust, assignments, security agreements, financing statements, and other instruments of absolute or collateral transfer without payment of any recording tax, stamp tax, transfer tax, or similar tax imposed by federal, state, or local

-13-

law.  Notice in the form annexed hereto as Attachment II
(i) shall have the effect of an order of the Court, (ii) shall
constitute sufficient notice of the entry of this Order to such
filing and recording officers, and (iii) shall be a recordable
instrument notwithstanding any contrary provision of
nonbankruptcy law.  This Court specifically retains jurisdiction
to enforce the foregoing direction, by contempt or otherwise.

22.  In each case where the schedules of assets and
liabilities of the Debtor filed in the Reorganization Case
reflect a Tax Claim that differs in amount from the Tax Claim
reflected in a return subsequently filed by the Debtor, the
amount so scheduled shall be deemed to be the amount reflected in
such return.

23.  (a)  All security and other deposits held by, or
reflected as liabilities on the books of, the Debtor with respect
to Assumed Contracts shall continue to be so held or reflected by
the New Company, subject to the New Company's rights and
obligations with respect thereto under the Assumed Contracts.

(b)  Except as provided in any order heretofore entered
by this Court, any security or other deposit made by the Debtor
before the Petition Date and held by, or reflected as a liability
on the books of, any entity shall be returned, or the amount
thereof remitted, to the New Company upon demand; provided,
however, that such entity may retain and apply such deposit in
accordance with Section 4.02 of the Plan to the extent that it
secures a Miscellaneous Secured Claim.

-14-

24.   Notwithstanding the terms of the Plan, no holder of a Claim shall be paid on account thereof to the extent that payment thereof has already been made by the Debtor.

25.   Notwithstanding the terms of the Plan:

(a)   Each employee of the Debtor who has been or will be terminated by the Debtor or the New Company after the Petition Date and before May 1, 1993 shall be entitled to vacation pay in lieu of vacation taken in accordance with the policy of the Debtor, and shall be paid such vacation pay after the Effective Date, to the extent not theretofore paid, in accordance with such policy.

(b)   Each employee of the Debtor (i) who has been terminated by the Debtor after the Petition Date and before the Effective Date, (ii) who was eligible for severance pay in accordance with the policy of the Debtor set forth on pages 111 and 112 of the Debtor's Human Resources Practices Manual (the "Basic Severance Policy"), and (iii) who has not been paid in full for such severance pay, shall be paid such severance pay after the Effective Date, to the extent not theretofore paid, in accordance with the Basic Severance Policy.

(c)   Each so-called "corporate" employee of the Debtor of whatever seniority, title or position (other than employees covered by the policy of the Debtor set forth on pages 112.1 and 112.2 of the Debtor's Human Resources Practices Manual (the "Senior Severance Policy")) who is terminated involuntarily by the New Company on or after the Effective Date and before May 1,

-15-

1993 for any reason other than dishonesty, insubordination, or conflict of interest, shall be entitled to severance pay in accordance with the following schedule:

| Length of Service | Severance Pay |
|---|---|
| Up to 1 year | 1 week's base pay |
| Over 1 year to 2 years | 2 weeks' base pay |
| Over 2 years to 4 years | 3 weeks' base pay |
| Over 4 years | 4 weeks' base pay |

(d) Each employee of the Debtor who is covered by the Senior Severance Policy (other than Copeland and William A. Copeland) and who is terminated involuntarily by the New Company on or after the Effective Date and before May 1, 1993 for any reason other than dishonesty, insubordination, or conflict of interest, shall be entitled to severance pay in accordance with the Senior Severance Policy. Copeland is acknowledged to be covered by the Senior Severance Policy, but his entitlement to payment thereunder shall be determined by the treatment of his Subordinated Insider Claim therefor in accordance with Section 5.05 of the Plan and the existence of any offsetting claims of the Debtor against him, subject to Copeland's position that he is entitled to payment in full for such severance rather than payment of only eighty-five percent (85%) thereof. By virtue of the terms of the Senior Severance Policy and Section 6.05(b) of the Plan, William A. Copeland is not entitled to payment under the Senior Severance Policy.

(e) For the purposes of subparagraphs (c) and (d) of this paragraph 25, length of service shall include eligible periods of service with either the Debtor or the New Company,

-16-

whether occurring before or after the Petition Date, the Confirmation Date, or the Effective Date.

(f)  Notwithstanding the foregoing provisions of this paragraph 25, the New Company shall have the right, but not the obligation, (i) to install new policies with respect to severance pay, or vacation pay in lieu of vacation taken, for employees terminated after April 30, 1993; (ii) to extend such new policies to any employee terminated before May 1, 1993 to the extent that such new policies are more favorable to such employee than the policies in effect on the Petition Date; and (iii) with the consent of any terminated employee, to vary the terms of any such policy or this paragraph 25 with respect to such employee in exchange for undertakings made by such employee to the New Company.

26.  (a)  Except as provided in subparagraph (b) of this paragraph 26, all requests for the payment of Administrative Claims incurred prior to the Effective Date, and all final applications for compensation and reimbursement by professional persons for services rendered or expenses incurred prior to the Effective Date, shall be filed with this Court not later than sixty (60) days after the Effective Date; provided, however, that no such request is required for Administrative Claims incurred in the ordinary course of business of the Debtor and arising in favor of entities other than such professional persons or taxing authorities whose Claims are covered by subparagraph (b) of this paragraph 26.  No applications will be filed for compensation and

reimbursement by professional persons for services rendered or expenses incurred on or after the Effective Date, and such compensation and reimbursement may be paid by the New Company directly in accordance with ordinary business practices and without further authorization by this Court.

(b)  All requests for payment of Administrative Claims and other Claims by a governmental unit for taxes (and for interest and/or penalties related to such taxes) for any tax year or period, all or any portion of which ends within the period from and including the Petition Date through and including the Confirmation Date, and for which no bar date has otherwise been previously established, must be filed on or before the later of (i) sixty (60) days following the Effective Date, or (ii) one hundred eighty (180) days following the filing with the applicable governmental unit of the tax return for such taxes for such tax year or period.

27. Any claims, requests for payment, or applications of a kind specified in paragraphs 16(b), 17(b), or 26 hereof which are not filed on or before the respective deadlines set forth therein shall not participate in any distribution under the Plan and shall be forever barred; neither the Debtor, nor the Estate, nor the New Company, nor any disbursing agent, nor any officer, director, employee or professional person employed by any of the foregoing shall have any liability therefor or with respect thereto; and any holder of any such claim shall be forever barred from asserting any such claim against the Debtor, the Estate, the

New Company, any disbursing agent, any officer, director, employee or professional person employed by any of the foregoing, or their respective property, whether any such claim is deemed to arise prior to, on or subsequent to the Effective Date.

28.  On the Effective Date, the Old Common Stock and the Old Preferred Stock shall be deemed to be cancelled.

29.  (a)  Except as provided in the Plan and in subparagraph (b) of this paragraph 29, in accordance with Sections 1141(b) and 1141(c) of the Bankruptcy Code, on the Effective Date the Debtor and, by virtue of the merger, the New Company shall be vested with all of the property of the Estate, free and clear of all claims, liens, charges, and other interests of creditors and equity security holders of the Debtor.  From and after the Effective Date, the Debtor and, by virtue of the merger, the New Company may operate each of their businesses free of any restrictions imposed by the Bankruptcy Code, the Bankruptcy Court, or the United States Trustee.

(b)  Subject to the terms of the New Credit Documents and solely by virtue of the occurrence of the Effective Date and the merger, (i) all "Obligations" of the New Company (as defined in the New Credit Agreement) shall be secured by all liens, mortgages, security interests, and assignments that secured the Acquisition Debt and the DiP Debt, and (ii) such liens, mortgages, security interests, and assignments shall be perfected against the New Company and its property to the same extent as the same were perfected against the Debtor and its property.

-19-

30.    The New Common Stock and New Preferred Stock that is to be issued to creditors under the Plan is subject to the exemption from Section 5 of the Securities Act of 1933 (15 U.S.C. § 77a) and any state or local law requiring registration for offer or sale of a security or registration or licensing of an issuer of, underwriter of, or broker or dealer in, a security as provided in 11 U.S.C. § 1145, except with respect to any recipient that is an underwriter as defined in 11 U.S.C. § 1145(b) or an affiliate as defined in Securities Act Rule 144(a)(1). Recipients of New Common Stock and New Preferred Stock under the Plan that are neither affiliates nor underwriters (as so defined) will not be subject to further registration requirements under the Securities Act or restrictions on resale under Securities Act Rule 144. From and after the time that CIBC, the Acquisition Banks or Merrill Lynch receives New Common Stock or New Preferred Stock under the Plan, none of them shall be an "underwriter" or an "affiliate" (as so defined) with respect to such stock.

31.    The Proponents have exercised their option to have the Allowed Tax Claims of the United States Internal Revenue Service paid pursuant to the proviso to Section 2.03 of the Plan, and such treatment complies with Section 1129(a)(9)(C) of the Bankruptcy Code; provided, however, that the rate of interest to accrue on such Allowed Tax Claims under such treatment shall be (a) seven percent (7%) per annum on the first $100,000 of such Allowed Tax Claims, plus (b) nine percent (9%) per annum on the amount of such Allowed Tax Claims (if any) in excess of $100,000.

32.    The Proponents have exercised their option to have certain Allowed Miscellaneous Secured Claims paid pursuant to the proviso to Section 4.02 of the Plan, and such Allowed Miscellaneous Secured Claims are not impaired by such treatment within the meaning of Section 1124(2) of the Bankruptcy Code.

33.    During the period from the Confirmation Date to the Effective Date, (a) CIBC is authorized to conduct, and the Debtor is instructed to cooperate fully in, the transition procedures described in Attachment III annexed hereto, and all costs associated with such transition procedures shall constitute costs of administration of the Reorganization Case payable out of the Estate without further order of this Court; and (b) CIBC is authorized to transmit communications to the employees and franchisees of the Debtor in the forms set forth in Attachment IV annexed hereto.

34.    CIBC and the New Company shall have the right, to the full extent permitted by Section 1142 of the Bankruptcy Code, to apply to this Court for an order, notwithstanding any otherwise applicable nonbankruptcy law, directing any entity to execute and deliver any instrument or to perform any other act; provided, however, that without the consent of the affected party, or a determination by this Court that such relief is necessary to ensure the cooperation or compliance of any party or to compensate CIBC or the New Company for damages associated with a lack of such cooperation or compliance, no such order shall modify or impair any right, title, interest, privilege, or remedy

expressly provided or reserved to such party under the Plan or this Order.

35.    The New Company is hereby directed to file, not later than ninety (90) days after the Effective Date, a report containing information regarding the actions taken and the progress made by the New Company in consummating the Plan.

36.    Not later than five (5) Business Days after the Effective Date, (a) the New Company shall notify this Court of the occurrence of the Effective Date, and (b) notice of the entry of this Order in the form annexed hereto as Attachment V, which form is hereby approved, shall be mailed by the New Company to all creditors, equity security holders, and other parties that received written notice of the Confirmation Hearing, and shall be published once in each publication in which the notice of the Confirmation Hearing was published.

37.    The provisions of this Order are non-severable and mutually dependent.

38.    Each of the conditions to confirmation of the Plan, as set forth in Section 8.01 of the Plan, has been satisfied or waived.

39.    "Substantial consummation" of the Plan shall be deemed to occur upon completion of all transactions required by the Plan to be effected on the Effective Date, including the mailing or other delivery of distributions to holders of Claims that are Allowed Claims on the Effective Date to the extent so required, but excluding the making of distributions to holders of Claims

that become Allowed Claims after the Effective Date.

40.  The Proponents shall have the right to modify or amend the Plan after Confirmation to the full extent permitted by law.

41.  The Official Committee of Unsecured Creditors and the professionals hired by or on its behalf shall be continued for the limited purposes of (a) participating in any appeal of this Order, and (b) participating in any hearing on fees and expenses for such Committee or professionals.

[This space intentionally left blank.]

42.  The Court shall retain jurisdiction over the Reorganization Case to the extent provided in Section 9.04 of the Plan (including, without limitation, jurisdiction over that certain adversary proceeding entitled <u>Alvin C. Copeland</u> v. <u>Merrill Lynch & Co., Inc., et al.</u>, Adversary Proceeding No. 92-1186-FM).

Signed this 22 day of October, 1992.

UNITED STATES BANKRUPTCY JUDGE

AGREED TO AND ENTRY REQUESTED:

OPPENHEIMER, ROSENBERG &
   KELLEHER, INC.
711 Navarro, Sixth Floor
San Antonio, Texas  78205
(512) 224-2000


By: _____
   JOHN H. TATE, II
   State Bar No. 19666500
   RAYMOND W. BATTAGLIA
   State Bar No. 01918055
   TIMOTHY N. TUGGEY
   State Bar No. 29282900

   ATTORNEYS FOR CANADIAN
   IMPERIAL BANK OF COMMERCE,
   as AGENT

Of Counsel:

J. Ronald Trost, P.C.
State Bar No. 20238200
SIDLEY & AUSTIN
2049 Century Park East
Los Angeles, California  90067
(310) 553-8100

Thomas E. Pitts, Jr.
SIDLEY & AUSTIN
875 Third Avenue
New York, New York  10022
(212) 906-2000

AGREED AS TO FORM ONLY:

MONROE & LEMANN
201 St. Charles Avenue, Suite 3300
New Orleans, Louisiana  70170-3300
(504) 586-1900


By:

    Richard P. Wolfe #13634
    Richard W. Bussoff #3719
    Benjamin R. Slater, III #12127
    Mark E. Van Horn #14476
    Donald J. Miester, Jr. #20294

    ATTORNEYS FOR ALVIN C. COPELAND,
    DIVERSIFIED FOODS AND SEASONINGS,
    INC., and NATIONAL DEVELOPMENT CORP.


COX & SMITH INCORPORATED
2000 NBC Bank Plaza
112 East Pecan Street
San Antonio, Texas  78205
(512) 554-5500


By: _____
    Deborah D. Williamson
    State Bar No. 21617500

    ATTORNEYS FOR THE OFFICIAL
    COMMITTEE OF UNSECURED CREDITORS


RONALD G. WOODS
United States Attorney
Nexus Energy Tower
717 N. Harwood, Suite 400
Dallas, Texas  75201
(214) 655-3115


By: _____
    Andrew L. Sobotka
    Attorney, Tax Division
    State Bar No. 18819900

    ATTORNEYS FOR THE UNITED STATES OF AMERICA

-25-

AGREED AS TO FORM ONLY:

MONROE & LEMANN
201 St. Charles Avenue, Suite 3300
New Orleans, Louisiana 70170-3300
(504) 586-1900


By: _____
     Richard P. Wolfe #13634
     Richard W. Bussoff #3719
     Benjamin R. Slater, III #12127
     Mark E. Van Horn #14476
     Donald J. Miester, Jr. #20294

     ATTORNEYS FOR ALVIN C. COPELAND,
     DIVERSIFIED FOODS AND SEASONINGS,
     INC., and NATIONAL DEVELOPMENT CORP.


COX & SMITH INCORPORATED
2000 NBC Bank Plaza
112 East Pecan Street
San Antonio, Texas 78205
(512) 554-5500


By: _____
     Deborah D. Williamson
     State Bar No. 21617500

     ATTORNEYS FOR THE OFFICIAL
     COMMITTEE OF UNSECURED CREDITORS


RONALD G. WOODS
United States Attorney
Maxus Energy Tower
717 N. Harwood, Suite 400
Dallas, Texas 75201
(214) 655-3118


By: _____
     Andrew L. Sobotka
     Attorney, Tax Division
     State Bar No. 18819900

     ATTORNEYS FOR THE UNITED STATES OF AMERICA


-25-

## ATTACHMENTS TO CONFIRMATION ORDER

Attachment I          Restated Fourth Amended Plan

Attachment II         Notice of Order to Filing and Recording
                      Officers

Attachment III        Transition Procedures

Attachment IV         Letters to Employees and Franchisees

Attachment V          Notice of Confirmation