AMERICA'S FAVORITE CHICKEN COMPANY

June 13, 1994

Kam M. Nassar
Executive Vice President
Chief Financial Officer

VIA FACSIMILE (504) 832-8918
and FEDERAL EXPRESS
Mr. Al Copeland
Copeland's of New Orleans
1405 Airline Highway
Metarie, Louisiana 70001

RE:   Pending Litigation

Dear Al:

This letter is intended to reflect our mutual agreement to settle all claims and demands made by either of us in that certain proceeding in the Chapter 11 Bankruptcy In re Al Copeland Enterprises, Inc. (Bankr. W.D. Tex. Case No. 91-12575-FM, Adv. Pro. 93 1016-FM) ("Equitable Subordination Adversary") and in that certain litigation between us pending in the Federal District Court of the Eastern District of Louisiana (E.D. La. Civil Action No. 92-3961) ("Recipe Royalty Lawsuit"). This letter will bind the parties to the various promises set forth below, and obligates each of the parties to take whatever steps are necessary to conclude the settlement, including but not limited to the execution, delivery, and filing of any necessary formal documentation and the dismissal of the Equitable Subordination Adversary and Recipe Royalty Lawsuit.

It is understood between AFCC and CIBC, on the one hand, and Al Copeland and his owned or controlled entities (namely Diversified, MFY, NDC, CP Partnership and Gulf Venture) on the other hand, that they wish to fully and finally settle and resolve all claims, disputes and issues relating to the two lawsuits referenced above. Accordingly, the parties agree and promise among themselves as follows:

1(a).   The Equitable Subordination Adversary (which includes all claims filed by Al Copeland, Diversified, MFY, NDC, CP Partnership and Gulf Ventures or any other party or entity owned or controlled by Al Copeland in the matter of In re: Al Copeland Enterprises, Inc., Debtor, Chapter 11, Case No. 91-12575-FM-11, United States Bankruptcy Court, Western District of Texas) and the Recipe Royalty Lawsuit (the "Litigation") shall be dismissed with prejudice.

1(b).   In consideration of AFCC entering into the Formula Agreement Modification and other good and valuable consideration, including settlement of all of the Litigation, Al Copeland and Diversified agree that notwithstanding the provisions or current or future status

church's · popeyes.

Six Concourse Pkwy  •  Suite 1700  •  Atlanta, GA  30328-5352
404/391-9500  •  DIRECT 404/353-3050  •  FAX 404/353-3280



Mr. Al Copeland
June 13, 1994
Page 2

of any other agreements, including the Formula Agreement, as amended, and the Recipe Royalty Agreement, neither they nor any of their heirs, representatives, successors or assigns shall ever be entitled to or ever have any right or claim to royalties or other payments from AFCC relating to sales or any other business whatsoever transacted prior to March 21, 2004 at New Stores or New Franchised Stores. As used in this paragraph, the terms "New Stores" and "New Franchised Stores" have the same meaning as set forth in the Recipe Royalty Agreement. Nothing in this paragraph is meant to constitute an admission by AFCC or in any way to imply that Al Copeland and Diversified may have a legitimate claim for royalties relating to sales or other business transacted subsequent to March 21, 2004 at New Stores or New Franchised Stores, or that, but for this paragraph, Al Copeland and Diversified would be entitled to any such royalties for business transacted at such stores prior to March 21, 2004.

1(c).  Al Copeland and Diversified agree to the dismissal with prejudice of the Recipe Royalty Lawsuit by Court order, such dismissal to be subject to the terms and conditions set forth herein. Al Copeland and Diversified further covenant and agree never to file any lawsuit or make any claims against any person or party relating to the past, present or future validity or enforcement of the Recipe Royalty Agreement or to the alleged termination thereof, subject only to the exception set forth in the following sentence. Notwithstanding the foregoing sentence, Al Copeland and Diversified reserve the right to file subsequent to March 20, 2004, but at no time before then, a legal action against AFCC seeking (a) a declaration that the Recipe Royalty Agreement has terminated because the resolutory conditions for its termination have in fact all been fulfilled, and (b) to recover royalties based on sales at New Stores and New Franchised Stores occurring after March 20, 2004. The grounds of and relief sought in any such lawsuit shall be strictly limited as set forth in the preceding sentence. AFCC in turn reserves its right to contest the validity of any such lawsuit or claims on any and all grounds, and by entering into this agreement does not waive any of its rights or available defenses and in no way admits, implies or suggests that any such lawsuit or claims would be valid or legitimate. The parties agree, however, that any such lawsuit shall not be deemed barred by the res judicata effect of the dismissal of the Recipe Royalty Lawsuit, or by the collateral estoppel effect of any decisions rendered therein, because this prospective ground for termination is not one that was raised or could have been raised in the Recipe Royalty Lawsuit.

2.     The Formula Agreement dated July 2, 1979, between Alvin C. Copeland, Gilbert F. Copeland, Mary L. Copeland, Catherine Copeland, Russell J. Jones, on the one hand, and A. Copeland Enterprises, Inc. and Popeyes Famous Fried Chicken, Inc., on the other hand, as amended (the "Formula Agreement") is further amended and modified by providing that in lieu of the royalty payments otherwise required to be paid thereunder, the royalty payments required to be paid under the Formula Agreement for the period beginning May 1, 1994 and ending April 30, 1999, shall be a sum certain in the amount of $237,500.00 per month and thereafter, the royalties required to be paid for the period beginning May 1, 1999 and ending March 20, 2004, shall be a sum certain in the amount of $254,166.67 per

Mr. Al Copeland
June 13, 1994
Page 3

month pro rated for any period less than a full month. Except as otherwise provided herein, the Formula Agreement will remain in full force and effect.

3.    AFCC and Al Copeland and Diversified reaffirm the Supply Contract dated March 21, 1989 between New Orleans Spice Company, Inc. and Biscuit Investments, Inc. (the "Supply Contract"), acknowledge that each party intends to perform its obligations under such contract, and agree, provided all covenants and obligations under such contract are performed and satisfied by the parties thereto, that the Supply Contract will remain in full force and effect until March 20, 2004, at which time the parties acknowledge and agree the Supply Contract terminates.

The parties agree that the items covered by the Supply Agreement (the "Covered Items") include such Covered Items as the same may be modified from time to time (with the approval and consent of AFC).

The parties further agree that a change in the method of processing, manufacturing, producing or preparing products used by AFC in the Popeyes system (the "Products") shall not constitute a new Product for purposes of the Supply Agreement. For example a change from (a) fresh to frozen, (b) marination in-store to pre-marination or (c) cooked-in-store to pre-cooked shall not constitute a new Product and AFC shall otherwise continue to purchase the Items identified in the Supply Contract from Diversified used in connection with the preparation of such Product as changed, provided that Diversified modifies such Items, to the extent necessary, in order for such Items to be used in the new processing, manufacturing, and/or preparation of such Products as changed.

By way of further example, AFC has decided to use a freezer-to-fryer butterfly shrimp product versus a fresh product. The Supply Contract identifies as an Item the breading used in the preparation of butterfly shrimp. In order to accommodate AFC's freezer to fryer product, it is necessary to modify the breading in order to obtain the same taste profile and color. In such instance, the breading will continue as an Item under the Supply Agreement provided Diversified modifies such item as above stated.

4.    Upon execution of this letter, the parties may enter into a separate Settlement Agreement, but the failure to do so shall not affect this settlement agreement in any way whatsoever; and further, the parties shall cause stipulations of dismissal to be entered with respect to the two lawsuits referenced above, dismissing the actions with prejudice, with each party to bear its respective costs.

5.    To the extent that any party institutes legal action against another in connection with the subject matter of the terms of the settlement agreement or any promises made thereunder, the prevailing party will be entitled to recover its costs and attorneys fees incurred in connection with prosecution or defense of the action.

Mr. Al Copeland
June 13, 1994
Page 4

6.    Any sums due AFCC for the Race Team Assets will be forgiven.

7.    The parties specifically except from this settlement agreement any claims or obligations arising under franchise agreements for the operation of Church's or Popeyes restaurants.

8.    The parties agree to cooperate with each other to the extent possible, to provide for advantageous tax consequences to all parties resulting from the settlement provided for herein; provided that the failure of the parties to reach an agreement regarding the structure of the payments or other aspects of the settlement as provided herein shall not otherwise affect this settlement agreement.

In addition to the foregoing, each party shall bear its own costs and attorneys fees, except as specified above. This letter will be governed by the laws of the State of Louisiana.

Al, if you are in agreement, then please indicate your agreement to the foregoing terms by signing below, fax the executed copy to me and overnight to me the original.

Sincerely,

Kam M. Nassar
Executive Vice President
and Chief Financial Officer
America's Favorite Chicken
Company (AFCC)

I hereby acknowledge that I have
read and understood the terms of
the settlement embodied herein, that
I have consulted with counsel of my
choice in connection therewith, and I
agree to such settlement as set forth
hereinabove.

Al Copeland, individually, and on behalf
of Diversified Foods and Seasonings, Inc.
(Diversified), My Favorite Year, Inc. (MFY),
National Development Corporation (NDC),
Gulf Venture Associates (Gulf Venture) and
CP Partnership

k:\law\philling\cope.ltr

SETTLEMENT AGREEMENT BETWEEN
ALVIN C. COPELAND ("Copeland") AND
DIVERSIFIED FOODS AND SEASONINGS, INC. ("Diversified")
AND AFC ENTERPRISES, INC. ("AFC") AND
FLAVORITE LABORATORIES, INC. ("Flavorite")

1.    AFC will quitclaim, transfer and assign to Copeland and Diversified any interest it may have in the formulas and recipes for Popeyes and Churchs products currently claimed to be owned by Copeland and Diversified (the "Copeland formulas"). Copeland and Diversified will quitclaim, transfer and assign to AFC any interest they may have in the formulas and recipes for Popeyes and Churchs products currently held by AFC (the "Flavorite formulas"). In addition, AFC will direct Flavorite to turn over to AFC all of the documentation in its records relating to the development of the Flavorite formulas (the "Flavorite documentation").

2.    All claims, counter-claims and cross-claims asserted in Copeland, et al. v. Flavorite Laboratories, Inc., et al., Civil Action No. 3:94CV686BS, U.S. District Court for the Southern District of Mississippi, shall be dismissed with prejudice, and the parties will execute a mutual release.

3.    Once the settlement is effective, Copeland, Diversified and AFC agree that no defaults exist under the Formula Agreement or the Supply Agreement and that such agreements are in full force and effect as modified by this Settlement Agreement.

4.    Diversified will continue to supply product(s) to the Popeyes system utilizing the Copeland formulas under the terms of the Supply Contract dated March 21, 1989 (the "Supply Contract"). The Supply Contract will be amended to extend the term of such contract until March 20, 2029 (the "Amended Supply Contract"). The Amended Supply Contract will cover all products covered by the Supply Contract. At the end of its term, the Amended Supply Contract shall be renewed in five (5) year increments, on terms agreed to by Diversified and AFC.

From and after March 20, 2004, and continuing so long as the Amended Supply Contract (or any renewal thereof) shall remain in effect, the Formula Agreement dated June 2, 1979, between Alvin

C. Copeland, et al., on the one hand, and A. Copeland Enterprises, Inc., et al., on the other hand, as amended (the "Formula Agreement"), shall be further amended and modified by providing that in lieu of the royalty payments otherwise required to be paid thereunder, the royalty payment required to be paid shall be a sum certain in the amount of $254,166.67 per month, pro rated for any period less than a full month.  Upon any initiation of legal proceedings for the payment of additional royalties the Amended Supply Contract (or any renewal thereof) shall be terminated without additional notice.

Paragraph 1(c) of the Letter Agreement executed on June 13, 1994, by and between Copeland and Diversified, et al., on the one hand, and AFC, on the other hand, as amended by this Agreement, shall remain in full force and effect so long as the Amended Supply Contract (or any renewal thereof) shall remain in effect.  The premature assertion of any claim described in said Paragraph 1(c) shall terminate the Amended Supply Agreement (or any renewal thereof) without additional notice.  Said Paragraph 1(c) is amended to provide that neither Copeland nor Diversified shall ever seek to recover from AFC royalties based on sales at New Stores and New Franchised Stores occurring while the Amended Supply Contract (or any renewal thereof) is in effect.

5.    AFC will require franchisees in Thailand and Korea to purchase Popeyes products being supplied by Diversified as soon as Diversified receives approval for such products to be imported into each such country; provided, however, in any event, there shall be no such requirement to purchase such products until the event set out above has occurred and there has been a sufficient period of time after the occurrence of such event, not to exceed six months, to run off any inventory of Flavorite, or any other distributor, of existing supplies of products being furnished to such franchisees.

2

TOTAL P.03

This the 29ᵗʰ day of May, 1997.

AGREED TO AND APPROVED:


SIGNATURE PAGE ATTACHED
ALVIN C. COPELAND


DIVERSIFIED FOODS & SEASONINGS, INC.


BY:   SIGNATURE PAGE ATTACHED
      G.J. HART
      PRESIDENT


APC ENTERPRISES, INC.


BY:   SIGNATURE PAGE ATTACHED
      FRANK J. BELATTI
      CHAIRMAN AND CEO


FLAVORITE LABORATORIES, INC.


BY:   _Larry D. Shaw_
      LARRY D. SHAW
      VICE PRESIDENT FINANCE


3

FAX NO. 8015438030    P. 05
P. 3
M803
MAY-29-97 THU 12:09    WHKING COX
05/29/97   10:25   FAX 804 253 3080    AFC
5-29-1997 10:19AM    FROM BIG HOUSE 5048854965    ASL

This the 29th day of MAY, 1997.

AGREED AND APPROVED:

_____
ALVIN C. COPELAND

DIVERSIFIED FOODS & SEASONINGS, INC.

BY: _____
       GUS HART
       PRESIDENT

AFC ENTERPRISES, INC.

BY: _____
       FRANK J. BELATTI
       CHAIRMAN AND CEO

FLAVORITE LABORATORIES, INC.

BY: _____
       LARRY D. SHAW
       VICE PRESIDENT FINANCE

3

STATE OF LOUISIANA

PARISH OF JEFFERSON

KNOW ALL MEN BY THESE PRESENTS, that:

WHEREAS, Alvin C. Copeland ("Alvin"), Gilbert E. Copeland ("Gilbert"), Mary L. Copeland ("Mary"), Catherine Copeland ("Catherine") and Russell J. Jones ("Russell") are now the sole owners of the basic recipe and formula used in the preparation of a spicy fried chicken commonly known as Popeyes Famous Fried Chicken ("Popeye Formula"), said ownership being in the following proportions:

| | |
|---|---|
| Alvin | 80.000% |
| Mary | 5.334% |
| Gilbert | 8.666% |
| Catherine | 4.000% |
| Russell | 2.000% |
| TOTAL | 100.000% |

WHEREAS, pursuant to oral agreements with A. Copeland Enterprises, Inc. ("ACE") and its wholly-owned subsidiary, Popeyes Famous Fried Chicken, Inc. ("PFFC"), Alvin granted ACE the right to use the Popeye Formula and granted PFFC the right to license others to use the Popeye Formula; and

WHEREAS, the parties hereto desire to confirm the prior oral agreements referred to in the preceding paragraph and to enter into a written license agreement;

NOW, THEREFORE, for and in consideration of the premises and mutual undertakings hereinafter set forth, Alvin, Mary, Gilbert, Catherine, Russell, ACE and PFFC do hereby agree as follows:

      (1)    Alvin warrants that the Popeye Formula, and detailed instructions with respect thereto, have been committed to writing and have been deposited in a safety deposit box at Firs

Progressive Bank, 1501 Veterans Memorial
Boulevard, Metairie, Louisiana.  In the event
of the unavailability, incapacity or death of
Alvin, arrangements have been made that one
of the senior officers of ACE will always be in
a position to gain access to the Popeye Formula
so that it will always be available to ACE and
PFFC.

(2)  Alvin, Mary, Gilbert, Catherine and Russell
("Grantors") hereby license and grant to ACE,
its successors and assigns, the exclusive right
to use the Popeye Formula in the United States
of America and all foreign countries, in stores
owned or operated by ACE or any subsidiary of
ACE, subject only to the rights of PFFC as here-
after set forth.

(3)  ACE shall pay to Grantors a royalty for the use
of the Popeye Formula, computed at the rate of
one and one-half (1.5%) per cent on gross receipts
from all items sold, less the direct sales taxes
paid or owed with respect thereto, at all stores
owned or operated by ACE or any subsidiary of
ACE.

(4)  Grantors hereby license and grant to PFFC, its
successors and assigns the exclusive right to
license others, except ACE or any subsidiary of
ACE, to use the Popeye Formula in the United
States of America and all foreign countries, sub-
ject only to the rights of ACE as hereinabove set
forth, and Grantors herewith ratify and confirm
all previous licenses granted by PFFC.

(5)  With respect to any store operated pursuant to a
Franchise Agreement from PFFC or any subsidiary

thereof PFFC shall pay to Grantors a royalty of one-half of one (0.5%) per cent on the gross receipts from all items sold, less the direct sales taxes paid or owed with respect thereto, from all such stores.

(6) The royalties hereinabove set forth shall be paid on or before the 10th day after the close of each month.  Grantors or anyone designated in writing by any of them shall have the right to examine the books and records of ACE and PFFC or any subsidiary of either, at reasonable times, to such limited extent as may be necessary to determine the accuracy or inaccuracy of the royalty being paid.

(7) ACE and PFFC specifically covenant and agree to maintain as strictly confidential and secret, and not to disclose to anyone, any or all information obtained or received from Alvin relating to the Popeye Formula.

(8) During the life of this agreement, Alvin shall not disclose to any party, other than designated representatives of ACE or PFFC, the Popeye Formula or anything related thereto.

(9) Alvin has disclosed to ACE certain secret methods, secret formulas and secret "know-how" used in connection with Popeyes Famous Fried Chicken restaurants, including and without limitation the following:

A unique system relating to the opening and operating of restaurants specializing in the preparation and sale of highly spiced chicken made with a unique spice and batter formula and other

related menu items utilizing confidential food formulas (the "POPEYES Famous Fried Chicken System"), the distinguishing characteristics of which include, without limitation, the name POPEYES Famous Fried Chicken; other confidential food formulas and recipes used in the preparation of other food products, specialized menus; specially designed buildings; interior and exterior layouts, unique trade dress and other identification schemes ("Indicia of Origin"); standards and specifications for equipment, equipment layouts, products, operating procedures and management programs.

(10)   The Popeye Formula, for which royalty is being paid pursuant to Paragraphs 3 and 5 above, was developed prior to the incorporation of ACE.  The items referred to in Paragraph 9 above were substantially developed after the incorporation of ACE and have always been the property of ACE.  So that there will be a written record, Grantors ratify and confirm the ownership of ACE of all of the items referred to in Paragraph 9, it being specifically understood that this ratification and confirmation of ownership does not apply to the Popeye Formula.

(11)   If Alvin makes, developes, or invents improvements in methods relating to the production of the Popeye Formula or has or hereafter acquires additional secret recipes for products suitable for use in POPEYES Famous Fried Chicken restaurants, such improvements and new recipes shall be promptly disclosed by Alvin to ACE and PFFC and shall be included herein without any alteration in royalty

payments.

(12) Mary, Gilbert, Catherine and Russell stipulate
and agree that Alvin knows the entire Popeye For-
mula and is in the best position to determine
how and for what consideration it should be
licensed.  Therefore, Mary, Gilbert, Catherine
and Russell do hereby give and grant to Alvin, his
assigns, his succession representative or anyone
designated by him in his last will and testament,
for the mutual benefit of all owners of the
Popeye Formula, the absolute and irrevocable right,
exercisable by Alvin, in their sole discretion to
(i) reduce the royalty payments due by ACE or
PFFC or any successor or assignee of either,
(ii) grant a moratorium on royalty payments due by
ACE or PFFC or any successor or assignee of either,
(iii) terminate either or all royalty payments,
(iv) change the time at which either or all roy-
alty payments are made or (v) make any other arrange-
ment including and without limitation the lease or
sale thereof with any person, firm or corporation
for the use of the Popeye Formula, including the
sale or transfer of ownership of the entire Popeye
Formula to any third person or corporation, not
related in any manner to Alvin, for cash, notes,
stock or any combination thereof.  Additionally,
Mary, Gilbert, Catherine and Russell agree to exe-
cute any and all documents presented to them for
the purpose of accomplishing the foregoing, and,
in the event they are unwilling or unable for any
reason to execute such documents, they hereby
appoint Alvin their agent, which agency is coupled
with an interest, for the purpose of executing any

and all documents necessary or desirable to
accomplish such purpose. The sole and only
restriction upon Alvin, his assigns, succes-
sion representative or anyone designated by him
in his last will and testament in relation to
the Popeye Formula is that if any when any
cash, notes, stock or other consideration or
any combination thereof is received by Alvin
or available by virtue of the ownership of
the Popeye Formula, 20% thereof will be
delivered or paid to Mary, Gilbert, Catherine
and Russell in their respective proportions at
the same time Alvin receives same.

(13)    This agreement shall be subject to termination
by Grantors or ACE or PFFC upon default by the
other party in the performance of any of the
terms, conditions, or covenants of this agreement
and failure to remedy said default within thirty
(30) days after written notice or demand, except
that the rights of any third person holding under
any franchise agreement from PFFC, its successors
or assigns shall not be prejudiced by any such
termination. Termination of this agreement in any
manner shall not discharge the liability for roy-
alty accrued or unpaid at the time of such termi-
nation.

(14)    This agreement shall remain in full force and
effect unless otherwise cancelled as provided in
Paragraph 13 above, as long as ACE or any subsid-
iary thereof or any franchisee of PFFC, its suc-
cessors or assigns, is using the Popeye Formula,
it being understood that a default or termination
by ACE shall not entitle Grantors to terminate

PFFC and, similarly, a default or termination by PFFC shall not entitle Grantors to terminate ACE.

IN WITNESS WHEREOF, the parties have executed this agreement at New Orleans, Louisiana, effective as of the 2nd day of July, 1979.

WITNESSES:

_____        _____
                                                Alvin C. Copeland

_____        _____
                                                Mary M. Copeland

_____        _____
                                                Gilbert E. Copeland

_____        _____
                                                Catherine Copeland

_____        _____
                                                Russell J. Jones

                                                A. COPELAND ENTERPRISES, INC.

_____        By: _____
                                                    W. Ronald Lewis
                                                    Vice President

                                                POPEYES FAMOUS FRIED CHICKEN, INC

_____        By: _____
                                                    W. Ronald Lewis
                                                    Vice President

## AMENDMENT

This Amendment made as of this 21st day of March, 1989 by and among Alvin C. Copeland ("Copeland"), New Orleans Spice Company, Inc., a Louisiana corporation ("Spice"), herein represented by its authorized officer, and Biscuit Investments, Inc., a Louisiana corporation ("Biscuit"), represented herein by its authorized officer;

### W I T N E S S E T H

WHEREAS, by virtue of a certain agreement (the "Formula Agreement") dated July 2, 1979, by and among A. Copeland Enterprises, Inc. ("ACE"), Popeye's Famous Fried Chicken, Inc. ("Popeye's"), Copeland and others, ACE acquired the right to use a certain recipe and formula for preparation of spicy fried chicken, any developments or improvements relating to the production of such recipe and formula and any additional recipes for products suitable for use in Popeye's restaurants ("Formula") and Popeye's acquired the right to license others to use the Formula;

WHEREAS, the manufacturing facilities have been conveyed to Spice;

WHEREAS, Spice, by virtue of certain contracts and transfers, has acquired ACE's entire interest in the

Formula and Copeland has acquired an additional four (4%) percent interest therein, so that Copeland and Spice together own the entire interest in the Formula in the proportions of eighty four (84%) percent for Copeland and sixteen (16%) percent for Spice;

WHEREAS, the parties desire to confer various rights upon one another and to provide otherwise with regard to the use of the Formula and compensation there-for;

NOW THEREFORE, in consideration of the premises and the agreements herein, and other valuable consider-ation, the receipt and sufficiency of which are hereby acknowledged by the parties, the parties agree to amend the Formula Agreement as follows:

I.

Copeland hereby authorizes Spice to utilize the Formula, and Spice agrees that it shall enjoy the right to utilize the Formula in the preparation of all spices, batter and other ingredients required in the preparation of spicy fried chicken known as Popeyes Fried Chicken or other food products ("Product").

II.

Pursuant to a Supply Contract of even date herewith and annexed hereto for reference, Spice has

2

agreed to supply Biscuit's requirements of Product for Biscuit's company-owned outlets as well as the franchisee-operated outlets in the system.

III.

In compensation for the rights hereby granted Biscuit, Biscuit shall pay to Copeland and Spice the following:

A. As to sales from outlets operated and owned by Biscuit, Biscuit shall pay Copeland one and twenty-six hundredths (1.26%) percent and Spice twenty-four hundredths (.24%) percent of gross receipts from all items sold, less the direct sales taxes paid or owed with respect thereto, at all stores owned or operated by Biscuit or any of its subsidiaries ("gross receipts").

B. As to sales made from outlets operated by Biscuit franchisees and licensees, Biscuit shall pay Copeland forty-two one-hundredths (.42%) percent and Spice eight one-hundredths (.08%) percent of gross receipts.

C. All of such payments to Spice and Copeland shall be paid weekly in arrears and shall

3

be based upon sales reports certified by
the chief financial officer or comptroller
of Biscuit, or such other person as the
parties may agree upon.

IV.

Without the other party's written consent first
obtained, neither party may assign or encumber its rights
hereunder; nor may this Agreement be assumed by any other
person.

V.

This Agreement may be amended only by a writing
executed by the parties hereto.

VI.

This Agreement establishes no third party bene-
ficiary rights in any persons not parties hereto.

VII.

This Agreement shall be construed in accordance
with the internal laws of the State of Louisiana.

VIII.

Except as modified herein, all the terms and
conditions of the Formula Agreement shall remain the
unchanged.

4

IX.

Copeland and Spice hereby agree that, upon the merger of Church's Fried Chicken, Inc. ("Church's") and Biscuit becoming effective, Church's shall become the Company hereunder and shall be entitled to all of the rights and benefits of Biscuit hereunder, subject to all of the covenants, duties, obligations, promises and liabilities of Biscuit hereunder.

5

Executed at New York, New York on the date
first written above.

BISCUIT INVESTMENTS, INC.          NEW ORLEANS SPICE COMPANY, INC.

ALVIN C. COPELAND

By: _____        By: _____
    Its: V.P                            Its:

6

SECOND AMENDMENT TO
FORMULA AGREEMENT

This Second Amendment to Formula Agreement (the "Second Amendment") is effective the 21st day of March, 1989.

WHEREAS, on July 2, 1979, A. Copeland Enterprises, Inc., a Louisiana corporation ("ACE"), Popeyes Famous Fried Chicken, Inc., a Louisiana corporation ("Popeyes"), Alvin C. Copeland ("Copeland"), and certain other individuals (the "Other Parties") entered an agreement providing for the licensing to ACE and Popeyes of certain secret recipes, formulas and processes (the "Formula") used in the preparation of food products sold by Popeyes Famous Fried Chicken restaurants owned and operated by ACE and franchised by Popeyes (the "Formula Agreement");

WHEREAS, subsequent to July 2, 1979, Copeland and ACE acquired all of the rights of the Other Parties in the Formula;

WHEREAS, subsequent to July 2, 1979, ACE and Popeyes each were merged with and into Biscuit Investments, Inc., a Louisiana corporation ("Investments");

WHEREAS, subsequent to July 2, 1979, the facilities of ACE used to manufacture spices, batter and other food products and ingredients prepared with the Formula for use by Popeyes restaurants were conveyed to New Orleans Spice Company, Inc., a Louisiana corporation ("Spice"), along with ACE's ownership interest in the Formula;

WHEREAS, on March 21, 1989, Spice and Investments entered into a Supply Contract whereby Spice agreed to sell and Investments agreed to purchase all of Investments' requirements of spices, batter and other food products and ingredients prepared with the Formula;

WHEREAS, on March 21, 1989, Copeland, Investments and Spice entered into an amendment to the Formula Agreement providing for, among other things, the payment by Investments to Copeland and Spice of certain royalties for the use of the Formula; and

WHEREAS, pursuant to an Amended and Restated Agreement and Plan of Merger, and effective September 21, 1989, Investments will be merged with and into Church's Fried Chicken, Inc., which will be the survivor of such merger and will be renamed "Al Copeland Enterprises, Inc." at the effective time thereof; and

WHEREAS, pursuant to the Amended and Restated Merger Loan Agreement dated September 21, 1989, among Investments, Canadian Imperial Bank of Commerce, New York Agency, as Agent (the "Agent"), and the financial institutions that are parties thereto (the "Merger Loan Agreement"), Biscuit is required to deliver to the



Agent, as a condition to the making of the loans provided for under the Merger Loan Agreement (the "Loans"), this Second Amendment.

NOW THEREFORE, in consideration of the premises, the mutual covenants set forth herein, and the individual and collective benefits to Copeland, Investments and Spice of the Merger Loan Agreement and the Loans, the parties hereto agree as follows:

1. Copeland warrants that the Formula, and detailed instructions with respect thereto, have been committed to writing and have been deposited in a safety deposit box at *First National Bank of Commerce, New Orleans* Louisiana. In the event of the unavailability, incapacity or death of Copeland, arrangements have been made that one of the senior officers of Spice will always be in a position to gain access to the Formula so that it will always be available to Spice.

2. The Formula Agreement, as amended, may not be amended after the execution date of this Amendment without the written consent of the Agent for so long as any of the Loans or any Obligations (as such term is defined in the Merger Loan Agreement) are unpaid.

IN WITNESS WHEREOF, the parties hereto have caused this Second Amendment to be executed on this 21st day of September, 1989.

_____
Alvin C. Copeland

BISCUIT INVESTMENTS, INC.

BY: _____
Title: Executive Vice President

NEW ORLEANS SPICE COMPANY, INC.

BY: _____
Title: Secretary and Treasurer

2