IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| AFC ENTERPRISES, INC.,<br><br>Plaintiff,<br><br>v.<br><br>DIVERSIFIED FOODS AND<br>SEASONINGS, INC.,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)   CIVIL ACTION NO.:<br>)   1:09-CV-0416<br>)<br>)<br>)<br>) |

## PLAINTIFF'S FIRST AMENDMENT TO COMPLAINT FOR DECLARATORY JUDGMENT

COMES NOW AFC Enterprises, Inc., plaintiff in the above-styled action, and hereby files this First Amendment to its Complaint for Declaratory Judgment, respectfully showing the Court the following:

### INTRODUCTION

Plaintiff AFC Enterprises, Inc. ("AFC") filed the present action against Defendant Diversified Foods and Seasonings, Inc. ("Diversified") on February 17, 2009. In its Complaint, AFC referenced a Supplemental Disclosure (as defined in the Complaint) filed in the United States Bankruptcy Court for the Western District of Texas, Austin Division, Case No. 01-12575-FM-11. See Complaint, ¶¶ 21, 25-

30. AFC alleged that the Supplemental Disclosure as adopted by the Bankruptcy Court on or about October 22, 1992, constituted part of the agreement between AFC and Diversified. Id., ¶ 36. AFC further alleged that, in accordance with the Supplemental Disclosure, it had instituted an arbitration proceeding with the American Arbitration Association ("AAA") related to pricing of products that are prepared with Diversified's formulas and recipes and which are supplied by Diversified to Popeyes restaurants. Id., ¶ 27. AFC's allegations concerning the Supplemental Disclosure were based on repeated representations from Diversified's corporate officers and employees that the Supplemental Disclosure, and particularly Exhibit A to the Supplemental Disclosure, was part of the agreement between the parties.

On March 4, 2009, Diversified filed an action against AFC in the United States District Court for the Eastern District of Louisiana. A true and correct copy of Diversified's Complaint (without attachments) is attached hereto as Exhibit "1" and incorporated herein by reference. In its Complaint, Diversified stated the following: "The CIBC Supplemental Disclosure is not and does not even purport to be an agreement. The CIBC Supplemental Disclosure is not signed by or on behalf of Diversified. The CIBC Supplemental Disclosure does not impose any binding obligations upon Diversified and does not even purport to do so." Exhibit "1", ¶

2

15. Diversified further stated that "[t]he CIBC Supplemental Disclosure does not amend and does not even purport to amend the Supply Contract." Id., ¶ 16. By virtue of its admissions *in judicio*, Diversified is judicially estopped from contending that the Supplemental Disclosure, or any part thereof or exhibit thereto, constitutes any part of the agreement between AFC and Diversified.

Because Diversified has admitted that the Supplemental Disclosure is not part of the agreement between the parties, and because any basis for arbitration arose out of the Supplemental Disclosure which Diversified has rejected and disavowed, AFC's allegations in its Complaint must be amended. AFC has also withdrawn its Demand for Arbitration filed with the AAA. A true and correct copy of the letter of withdrawal is attached hereto as Exhibit "2". In accordance with Fed.R.Civ.P. 15(a)(1)(A), and prior to a responsive pleading being served, AFC submits the following amendments to its Complaint.

1.

Following paragraph 5 of the Complaint, AFC adds the following paragraphs:

**"5(a). Diversified regularly and repeatedly conducts business in the Northern District of Georgia pursuant to the Supply Agreement, as defined herein. For many years, Diversified has**

3

shipped substantial quantities of products to distributors in the Northern District of Georgia for ultimate delivery to Popeyes stores located in the Northern District of Georgia. Diversified has received payments for such products in substantial amounts. Diversified currently continues to ship such products into the Northern District of Georgia and continues to receive substantial payments for such products.

5(b). Corporate officers of Diversified repeatedly travel to and conduct business in the Northern District of Georgia at AFC's corporate offices in Atlanta, Georgia. Mr. Rick Chapman, President of Diversified, traveled to Atlanta, Georgia on several occasions and met with the Chief Executive Officer of AFC concerning performance of the contract[s] at issue herein and the disputes at issue herein. Other employees of Diversified have traveled to AFC's corporate offices and repeatedly conducted substantial business in the Northern District of Georgia, all in furtherance of the Supply Agreement from which this dispute arises.

4

**5(c).  Diversified has personally directed its activities at residents of the Northern District of Georgia, including AFC.  Diversified has purposefully derived benefits from its activities in the Northern District of Georgia.  Such activities and benefits are in furtherance of and arise from the Supply Agreement.**

**5(d).    Diversified has sufficient minimum contacts with the Northern District of Georgia such that maintenance of this action does not offend traditional notions of fundamental fairness or fair play and substantial justice.**

**5(d).  This Court has general and specific personal jurisdiction over Diversified."**

2.

Paragraphs 23-28 of Plaintiff's Complaint, including footnotes and attached exhibit "5", are deleted.

3.

Paragraph 36 of Plaintiff's Complaint is deleted, and the following paragraph is inserted in lieu thereof:

**"36.  The Formula Agreement and the Supply Agreement, and the settlement agreements identified above, form the agreement by**

5

**which AFC and Diversified operate and which control their business relationship and operations."**

4.

Paragraph 47 of Plaintiff's Complaint is deleted.

5.

Paragraph 49 of Plaintiff's Complaint is deleted, and the following paragraph is inserted in lieu thereof:

**"49.    The preceding paragraphs are incorporated herein by reference."**

6.

Paragraph 51 of Plaintiff's Complaint is deleted, and the following paragraph is inserted in lieu thereof:

**"51. The terms of the Supply Agreement clearly provide that AFC is not required to purchase products from Diversified. Rather, the Supply Agreement clearly defines "Product" as "spicy fried chicken prepared with batter, spices, and other ingredients prepared with the Popeye formula." See Exhibit "4".**

7.

6

Paragraph 52 of Plaintiff's Complaint is deleted, and the following paragraph is inserted in lieu thereof:

> **"52. Despite the terms of the Supply Agreement, Diversified has asserted that that the Supply Agreement extends to products other than spicy fried chicken. Diversified has further asserted that it has a protectable interest not only in its formulas or recipes but also in a general taste or product, i.e., "spicy chicken," "biscuits," "macaroni and cheese," and "1000 Island Dressing." Diversified therefore contends that so long as AFC or its franchisees are serving "spicy chicken," "biscuits," "macaroni and cheese," "1000 Island Dressing," and even other unidentified products, AFC and its franchisees must purchase their supply of seasoning and/or product mixes from Diversified at whatever price Diversified chooses to impose regardless of market, regulatory, and governmental forces."**

8.

Paragraph 57(b) of Plaintiff's Complaint is deleted, and the following paragraph is inserted in lieu thereof:

"(b) declares that AFC is entitled to develop and create its own recipes or formulas for any products sold or to be sold in Popeyes restaurants throughout the United States and internationally, so long as AFC does not reverse-engineer any recipes owned by Diversified."

9.

Paragraph 57(c) of Plaintiff's Complaint is deleted, and the following paragraph is inserted in lieu thereof:

"(c) declares that AFC is not obligated to purchase products from Diversified for use in AFC's own recipes or formulas."

10.

Following paragraph 57 of Plaintiff's Complaint, AFC adds the following paragraphs:

## "COUNT 2 - DECLARATORY JUDGMENT ON PRICING ISSUES

"58.    The preceding paragraphs are incorporated herein by reference.

59.    AFC has consistently purchased products from Diversified that are prepared with Diversified's recipes and formulas.  AFC has instructed its franchisees to do the same and has identified

8

such products as approved products to the AFC franchisee network.

60. Despite the terms of the Supply Agreement, Diversified has asserted that products supplied to Popeyes restaurants other than spicy fried chicken are covered by the Supply Agreement including "biscuits," "macaroni and cheese," and a whole host of other products. As set forth herein, AFC disputes those contentions. To the extent the Court concludes that products other than spicy fried chicken are covered by the Supply Agreement (which AFC disputes), Diversified's pricing for such products must be reasonable.

61. No price terms are set forth in the Supply Agreement. Pursuant to applicable law, Diversified may only charge a reasonable price for the products sold to AFC and its franchisee network.

62. Diversified's pricing of products is not fair, reasonable, or in accordance with industry norms. Other suppliers to AFC and its franchisee network provide AFC and its franchisees with transparency in pricing such that the cost of components or

ingredients can be determined, along with the profit margin being earned by the supplier. Diversified provides no such transparency in pricing, which is not fair and reasonable in the industry.

63. With respect to international markets, Diversified's pricing is not reasonable. AFC's competitors utilize products manufactured overseas to be distributed to international markets. Diversified, however, continues to manufacture its products in the United States for shipment to international markets. This results in enormous inefficiencies and much higher prices for Diversified's products internationally when compared to available like kind and quality products manufactured closer to the Popeyes restaurants.

64. With respect to certain foreign countries, governmental entities are increasingly requiring that all raw materials used in fast food restaurants, such as Popeyes, be manufactured inside the country. Popeyes has repeatedly made Diversified aware of increased governmental regulations and restrictions on importation of products, but Diversified has failed and/or refused

to establish facilities or partnerships so as to manufacture products in compliance with the laws of various countries. Accordingly, in certain foreign countries, such as Turkey, Diversified cannot possibly perform under the Supply Agreement.

65. All of Diversified's products supplied to AFC's franchisees in international markets are not being provided at reasonable prices.

66. With respect to products supplied to AFC and its franchisees domestically, AFC believes that most, if not all, of the products supplied by Diversified are not being supplied at reasonable prices. Because of the lack of transparency in pricing, however, AFC cannot adequately compare all of the prices of Diversified with those of other suppliers who could offer a like kind and quality product. From its own internal analysis and general discussions with other suppliers, however, AFC believes at least the following products supplied domestically by Diversified to AFC and its franchisees are not being supplied at reasonable prices: (a) Red beans; (b) Cajun meat; (c) Cajun Gravy; (d) Jambalaya; (e) Macaroni and cheese; (f) Mild seasoning; (g) Spicy #2 seasoning; (h) Poultry batter; (i) French fry shoestring batter;

and    (j) Zero trans biscuit.    Upon disclosure of proper pricing information through the course of discovery in this action, AFC reserves the right to add other products to this list.

67.    Through discussions and meetings between representatives of AFC and representatives of Diversified, a controversy has developed over Diversified's performance under the Supply Agreement.    Diversified contends that it has no obligation to provide any price transparency to AFC or its franchisees and that it may, in essence, charge AFC and its franchisees anything it wants for the products provided to the AFC system.    AFC contends that Diversified has breached, and continues to breach, the Supply Agreement by failing to provide AFC and its franchisees with reasonable prices.

68.    AFC has repeatedly attempted to resolve its dispute with Diversified, but Diversified has repeatedly refused to provide any transparency in pricing or to provide fair and reasonable pricing to AFC and its franchisee network.

69.    Pursuant to 28 U.S.C. § 2201, AFC requests that the Court enter a declaratory judgment:

12

    (a)    Finding that Diversified has breached the Supply Agreement by having provided products to AFC and its franchisees at prices that were not reasonable, or, alternatively;

    (b)    Determining a reasonable price for the products at issue herein and ordering that Diversified may only charge AFC and its franchisees the determined reasonable prices in the future or, if Diversified fails or refuses to do so, declaring that Diversified has breached the Supply Agreement such that AFC and its franchisees have no obligations whatsoever under the Supply Agreement; and

    (c)    Granting such other and further relief as deemed just and appropriate."

11.

All other allegations of Plaintiff's Complaint remain as pled.

13

Respectfully submitted, this 6th day of March, 2009.

/s Alan G. Snipes
C. Neal Pope
Georgia Bar No. 583769
Jay F. Hirsch
Georgia Bar No. 357185
Alan G. Snipes
Georgia Bar No. 665781
Pope, McGlamry, Kilpatrick, Morrison
  & Norwood, LLP
Synovus Centre, 1111 Bay Avenue, Suite 450
P. O. Box 2128 (31902-2128)
Columbus, GA 31901-2412
706-324-0050
706-327-1536 FAX

Richard H. Gill
George W. Walker, III
Copeland, Franco, Screws & Gill, PA
P.O. Box 347
444 South Perry Street
Montgomery, AL 36101-0347
334-834-1180
334-834-3172 FAX

**ATTORNEYS FOR PLAINTIFF**
**AFC ENTERPRISES, INC.**

## **CERTIFICATION OF FONT AND POINT SELECTION**

Pursuant to Local Rule 7.1(D), and Local Rule 5.1(B), Plaintiff certifies that

this document is prepared in font Times New Roman 14 Point.

s/ Alan G. Snipes
Georgia Bar No. 665781
Attorney for Plaintiff

## CERTIFICATE OF SERVICE

This is to certify that the foregoing **PLAINTIFF'S FIRST AMENDMENT**

**TO COMPLAINT FOR DECLARATORY JUDGMENT** has been served upon

Defendant's counsel via Facsimile and U.S. mail, first class postage prepaid, to-

wit:

Phillip A. Wittmann, T.A.
Dorothy H. Wimberly
Brooke C. Tigchelaar
STONE PIGMAN
WALTHER WITTMANN, L.L.C.
546 Carondelet Street
New Orleans, Louisiana 70130-3588
(504) 596-0843 FAX

This 6th day of March, 2009.

s/  Alan G. Snipes
Counsel for Plaintiff

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| DIVERSIFIED FOODS AND SEASONINGS, INC. | * |
| | * CIVIL ACTION |
| | * |
| | * NO. |
| Plaintiff, | *. |
| | * SECTION " "; MAG. " " |
| VERSUS | * |
| | * JUDGE |
| | * |
| AFC ENTERPRISES, INC. | * MAGISTRATE |
| | * |
| | * |
| Defendant. | * |
| | * |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## COMPLAINT FOR DECLARATORY JUDGMENT AND PRELIMINARY AND PERMANENT INJUNCTION

Diversified Foods and Seasonings, Inc. brings this action, seeking a declaratory judgment and injunctive relief, respectfully representing as follows:

## THE PARTIES

1.

Plaintiff, Diversified Foods and Seasonings, Inc. ("Diversified" or "Plaintiff") is a Louisiana corporation with its principal place of business in the Eastern District of Louisiana.



9670938v.4

2.

Defendant, AFC Enterprises, Inc. ("AFC" or "Defendant") is a Minnesota corporation with its principal place of business in the Northern District of Georgia.

## JURISDICTION AND VENUE

3.

This Court has diversity jurisdiction over this dispute pursuant to 28 U.S.C. § 1332, because this is an action between citizens of different states and because the value of declaratory relief sought, the value of Plaintiff's rights to be protected, and the extent of the injury to be prevented exceeds the amount of $75,000, exclusive of interest and costs.

4.

Venue for this action is proper in this District pursuant to 28 U.S.C. § 1391(a)(2) because a substantial part of the events giving rise to this claim occurred in this judicial district. Further, venue for this action is proper in this District pursuant to 28 U.S.C. § 1391(a)(1) because the Defendant is subject to personal jurisdiction in this judicial district pursuant to Louisiana R.S. 13:3201.

## FACTS

5.

Diversified and AFC are parties to a Supply Contract originally made on March 21, 1989 between New Orleans Spice Company, Inc., the former name of Diversified, and Biscuit Investments, Inc., a predecessor in interest to AFC.

6.

The Supply Contract, which is a 4-page, double-spaced agreement, provides in pertinent part (substituting the names of the current parties):

- 2 -

967096v.4

I.

[Diversified] shall sell to [AFC], or as [AFC] directs, all of the Product required by [AFC], and [AFC] shall purchase its requirements for the consideration hereafter stated.

\* \* \*

IV.

Prices for the Product shall be as quoted or posted from time to time by [Diversified] consistent with past practices, shall be payable C.O.D. or on such other basis as shall be mutually determined; and shall be uniform throughout the Popeyes Famous Fried Chicken and Biscuit system.

\* \* \*

VII.

This Agreement may be amended only by a writing executed by the parties hereto.

\* \* \*

X.

This Agreement shall be construed in accordance with the internal laws of the State of Louisiana.

(*See* Supply Contract, attached as Exhibit A.)

7.

The Supply Contract does not contain any arbitration clause or agreement to arbitrate whatsoever. The Supply Contract does not even mention arbitration.

8.

The Supply Contract contains no further provisions regarding price beyond those in Section IV quoted above.

- 3 -

967096v.4

9.

The Supply Contract contains no provisions requiring either party to disclose the amount of its costs, revenues, or profits to the other.

10.

The Supply Contract was assumed by AFC's predecessor-in-interest in accordance with Sections 365 and 1123(b)(2) of the Bankruptcy Code as part of the Confirmed Plan of Reorganization in the Chapter 11 bankruptcy proceedings captioned *In re Al Copeland Enterprises, Inc.*, No. 91-12575-FM-11, United States Bankruptcy Court, Western District of Texas. (*See* Order Confirming Fourth Amended Plan, entered Oct. 22, 1992, ¶ 14, attached as Exhibit B, Restated Fourth Amended Plan, attached as Exhibit C.)

11.

Subsequently, in a letter dated June 13, 1994 among Diversified, a predecessor-in-interest of AFC (referred to as AFCC or AFC), and others (the "1994 Settlement Agreement"), Diversified and AFC's predecessor-in-interest, among other things, expressly reaffirmed the Supply Contract. (*See* 1994 Settlement Agreement, attached as Exhibit D.)

12.

In a second settlement agreement, this time dated May 29, 1997, among Diversified, AFC, and others (the "1997 Settlement Agreement"), which settled allegations that AFC had misappropriated certain trade secret recipes of Diversified, Diversified and AFC specifically agreed, among other things, that "no defaults" existed under the Supply Contract and that the term of the Supply Contract was extended until March 20, 2029. (*See* 1997 Settlement Agreement, attached as Exhibit E.)

- 4 -

13.

Diversified and AFC are also parties, through their predecessors-in-interest, to an agreement dated July 2, 1979 among various persons relating to certain recipes and formulas and other intellectual property rights (the "Formula Agreement", attached as Exhibit F), an amendment thereto dated March 21, 1989 (the "Amendment to Formula Agreement", attached as Exhibit G), and a second amendment thereto also dated March 21, 1989 (the "Second Amendment to Formula Agreement", attached as Exhibit H), as well as certain other agreements not pertinent to the present action.

14.

On February 17, 2009, AFC filed against Diversified a Demand for Arbitration with the American Arbitration Association in Atlanta, Georgia. In the Demand for Arbitration, AFC apparently claims that a disclosure document, filed on August 13, 1992, by the Canadian Imperial Bank of Commerce ("CIBC") in a bankruptcy proceeding of a predecessor-in-interest of AFC, somehow amended the Supply Contract and incorporated into it an agreement to arbitrate and certain provisions regarding pricing. (See Demand for Arbitration, attached as Exhibit I.[1])

15.

The disclosure document is entitled Supplemental Disclosure Relating to Plan of Reorganization Proposed by Canadian Imperial Bank of Commerce, as Agent ("CIBC Supplemental Disclosure"). (See CIBC Supplemental Disclosure, attached as Exhibit J.) The CIBC Supplemental Disclosure is not and does not even purport to be an agreement. The CIBC

---

[1]    The voluminous exhibits to the Demand for Arbitration are not included in Exhibit I since those same exhibits are otherwise attached to this Complaint.

- 5 -

Supplemental Disclosure is not signed by or on behalf of Diversified. The CIBC Supplemental Disclosure does not impose any binding obligations upon Diversified and does not even purport to do so.

16.

The CIBC Supplemental Disclosure does not amend and does not even purport to amend the Supply Contract. The section of the CIBC Supplemental Disclosure on which AFC relies consists of a lengthy "Statement of Intentions" by CIBC about the intentions of AFC (referred to as the New Company) and its management.

17.

With respect to arbitration, the CIBC Supplemental Disclosure states that "if any pricing dispute with Diversified cannot be resolved by the parties themselves, the New Company [AFC] proposes to submit any such dispute to binding arbitration under the auspices of the American Arbitration Association." (Exhibit J at p. 5.) The CIBC Supplemental Disclosure then adds: "Arbitration is proposed as a sign of the New Company's [AFC's] good faith and its determination to keep price disputes from interfering unnecessarily with its relationship with Diversified. If Diversified is prepared to agree to arbitration in principle, then the details of the procedure can be readily resolved." (Exhibit J at p. 5, n. 7.)

18.

Diversified has never agreed to arbitration with AFC, neither in principle nor in detail.

19.

With respect to pricing, the CIBC Supplemental Disclosure, after stating that it is the New Company's "intention" to continue purchasing certain products from Diversified, adds

- 6 -

that "[t]his assumes that Diversified ... will provide high quality products in sufficient quantity and at prices that are fair and reasonable." (Exhibit J at p. 4.) The CIBC Supplemental Disclosure also states that the proposed new management "intends" to monitor the fairness of Diversified's pricing and that it "believes that such efforts should result in prices ... that are fair and reasonable." (Id. at p. 5.) These statements about AFC's intentions and beliefs do not even suggest that the provisions of the Supply Contract are being amended.

20.

The CIBC Supplemental Disclosure is a disclosure document filed by CIBC to inform creditors of certain intentions of AFC and its new management and does not amend the terms of the Supply Contract in any way.

21.

Diversified and AFC (directly or though their predecessors-in-interest) have a long history of performance of the Supply Contract. Diversified and AFC have also engaged in extensive litigation on more than one occasion. Throughout this long history, up until the Demand for Arbitration, AFC has never previously asserted that the CIBC Supplemental Disclosure amends the Supply Contract or imposes any obligations on Diversified, or that the Supply Contract (or the CIBC Supplemental Disclosure) includes an actual arbitration agreement or requires Diversified to disclose its costs, revenues, or profits to AFC.

22.

On the same date that AFC filed its Demand for Arbitration, AFC also filed a Complaint for Declaratory Judgment in the United States District Court, Northern District of Georgia, Atlanta Division, No. 1:09-CV-0416. In that action, AFC seeks a declaration of certain rights and obligations of the parties under the Formula Agreement and the Supply Contract

- 7 -

relating to the scope of the products covered thereunder. Diversified avers that it is not subject to personal jurisdiction in the State of Georgia and intends to move to dismiss and/or transfer that action to this Court.

## COUNT ONE: DECLARATORY JUDGMENT

23.

Diversified repeats and realleges paragraphs 1-22 as though set forth fully in this Count.

24.

Diversified is entitled to a declaratory judgment against AFC regarding two sets of issues: (1) the lack of any arbitration agreement between the parties; and (2) the pricing provisions of the Supply Contract.

25.

There is an actual controversy between the parties with respect to each of the matters as to which Diversified seeks a declaratory judgment.

### A. Declaratory Judgment Regarding the Lack of an Arbitration Agreement Between the Parties

26.

The Supply Contract does not provide for arbitration or require Diversified to arbitrate any disputes with AFC.

967096v.A

27.

The CIBC Supplemental Disclosure does not amend the Supply Contract. The CIBC Supplemental Disclosure does not require Diversified to arbitrate any disputes with AFC.

28.

There is no arbitration agreement between AFC and Diversified. Diversified is not obligated to arbitrate any disputes with AFC. AFC has no right to proceed with arbitration against Diversified. AFC's Demand for Arbitration was and is not valid.

29.

Diversified is entitled to a declaratory judgment declaring (i) that the Supply Contract does not provide for arbitration or require Diversified to arbitrate any disputes with AFC; (ii) that the CIBC Supplemental Disclosure does not require Diversified to arbitrate any disputes with AFC; and (iii) that AFC has no right to proceed with arbitration against Diversified.

B. <u>Declaratory Judgment Regarding Pricing under the Supply Contract</u>

30.

With respect to pricing, the Supply Contract provides only that "Prices for the Product shall be as quoted or posted from time to time by [Diversified] consistent with past practices, shall be payable C.O.D. or on such other basis as shall be mutually determined, and shall be uniform throughout the Popeyes Famous Fried Chicken and Biscuit system." (Exhibit A at ¶ IV).

31.

The CIBC Supplemental Disclosure does not amend the Supply Contract. The CIBC Supplemental Disclosure does not set any standards that Diversified is required to follow.

- 9 -

or otherwise impose any binding obligations on Diversified, relating to the setting of prices under the Supply Contract.

32.

Neither the Supply Contract nor the CIBC Supplemental Disclosure requires Diversified to disclose its costs, revenues, or profits to AFC.

33.

Diversified has not breached the pricing provisions of the Supply Contract.

34.

Diversified is entitled to a declaratory judgment declaring (i) that the only provisions in the Supply Contract with respect to pricing are set forth in Section IV of the Supply Contract; (ii) that the CIBC Supplemental Disclosure does not set any standards that Diversified is required to follow, or otherwise impose any binding obligations on Diversified, relating to the setting of prices under the Supply Contract; (iv) that Diversified is not required to disclose its costs, revenues, or profits to AFC; and (v) that Diversified has not breached the pricing provisions of the Supply Contract.

## COUNT TWO: INJUNCTIVE RELIEF

35.

Diversified repeats and realleges paragraphs 1-34 as though set forth fully in this Count.

36.

Diversified is entitled to an injunction against Defendant under applicable law.

37.

- 10 -

967096v.4

Diversified has a substantial likelihood of success on the merits of its claim that AFC has no right to proceed with arbitration proceedings against Diversified, as more fully set forth above.

38.

A failure to enjoin AFC from proceeding with arbitration against Diversified would result in irreparable harm to Diversified in numerous ways, including that Diversified would be forced to defend the arbitration and subject itself to rulings and decisions of an arbitrator before whom Diversified never agreed to arbitrate and that Diversified would be deprived of its right to obtain a just and efficient resolution of its rights and obligations in a court of competent jurisdiction.

39.

There would be no harm to AFC as a result of the issuance of the requested injunctive relief, as AFC has no right to proceed with arbitration against Diversified and the entire arbitration proceeding would be an enormous waste of the parties' time and resources. Any possible harm to AFC is greatly outweighed by the irreparable harm that would result to Diversified as a result of a failure to enjoin the arbitration, as discussed above.

40.

Enjoining AFC from proceeding with the arbitration will not disserve the public interest. On the contrary, it will promote the public interest by upholding Diversified's right not to arbitrate without its consent, and avoiding the unnecessary, improper, and wasteful duplication of dispute resolution proceedings. Any issues that could be resolved in an arbitration are fully capable of resolution by this court.

557098v.4

41.

Diversified need not secure or post any bond as a prerequisite to injunctive relief, or such bond should be minimal.

## PRAYER FOR RELIEF

WHEREFORE, Diversified prays for the following relief in its favor and against the Defendant:

(1)     A declaratory judgment declaring that:

    (a)     the Supply Contract does not provide for arbitration or require Diversified to arbitrate any disputes with AFC;

    (b)     the CIBC Supplemental Disclosure does not require Diversified to arbitrate any disputes with AFC;

    (c)     AFC has no right to proceed with arbitration against Diversified;

    (d)     the only provisions in the Supply Contract with respect to pricing are set forth in Section IV of the Supply Contract;

    (e)     the CIBC Disclosure Statement does not set any standards that Diversified is required to follow, or otherwise impose any binding obligations on Diversified, relating to the setting of prices under the Supply Contract;

    (f)     Diversified is not required to disclose its costs, revenues, or profits to AFC; and

    (g)     Diversified has not breached the pricing provisions of the Supply Contract.

(2)     A preliminary and permanent injunction enjoining AFC and any and all persons or entities acting in concert or participating with AFC, directly or

967098v.4

indirectly, from proceeding with arbitration of any disputes between the AFC and Diversified relating to the Supply Contract; and,

(3)     For all other legal and equitable relief to which Diversified may be entitled.

Dated: March 4, 2009

Respectfully submitted,

_Phil Wittmann_

Phillip A. Wittmann, T.A., 16325
Dorothy H. Wimberly, 18509
Brooke C. Tigchelaar, 32029
STONE PIGMAN WALTHER
    WITTMANN L.L.C.
546 Carondelet Street
New Orleans, Louisiana 70130-3588
Telephone: (504) 581-3200
Facsimile: (504) 596-0843
Attorneys for Diversified Foods and
Seasonings, Inc.

- 13 -

2

POPE, McGLAMRY, KILPATRICK, MORRISON & NORWOOD, LLP

A LIMITED LIABILITY PARTNERSHIP INCLUDING A PROFESSIONAL CORPORATION

ATTORNEYS AT LAW

C. NEAL POPE, P.C.[1]
PAUL KILPATRICK, JR.[1]
R. TIMOTHY MORRISON[2]
MICHAEL L. McGLAMRY
EARLE F. LASSETER[4]
JAY F. HIRSCH[3]
WADE H. TOMLINSON
ALAN G. SNIPES
N. KIRKLAND POPE[4]
DAVID C. RAYFIELD[4]
AMELIA A. GODFREY[5]

THE PINNACLE
3455 PEACHTREE ROAD, N.E.
SUITE 925
P.O. BOX 191625 (31119-1625)
ATLANTA, GEORGIA 30326-3243
(404) 523-7706
FAX (404) 524-1648

P.O. BOX 1430
PHENIX CITY, ALABAMA 36868  1430
(334) 298-7354

1111 BAY AVENUE
SUITE 450
P.O. BOX 2128 (31902-2128)
COLUMBUS, GEORGIA 31901-2412
(706) 324-0050
FAX (706) 327-1536

OF COUNSEL:
WILLIAM USHER NORWOOD
TERESA PIKE TOMLINSON

1 ALSO LICENSED IN ALABAMA,
   FLORIDA & DIST. OF COLUMBIA
2 ALSO LICENSED IN ALABAMA &
   DIST. OF COLUMBIA
3 ALSO LICENSED IN FLORIDA
4 ALSO LICENSED IN ALABAMA
5 ALSO LICENSED IN DIST. OF COLUMBIA

REPLY TO:

COLUMBUS OFFICE

March 6, 2009

**VIA FACSIMILE AND U.S. MAIL**

Frances Crusoe, Case Manager
American Arbitration Association
2200 Century Parkway, Suite 300
Atlanta, GA 30345
(404) 325-8034 FAX

Re:  *AFC Enterprises, Inc. v. Diversified Foods and Seasonings, Inc.*
     Case Number: 30 459 00117 09

Dear Ms. Crusoe:

In accordance with our conversation today, this letter will confirm that my client, AFC Enterprises, Inc., hereby withdraws its Demand for Arbitration filed with the American Arbitration Association on February 17, 2009.  By copy of this to opposing counsel, I am notifying him of our withdrawal of the Demand for Arbitration.

Should you have any questions, please do not hesitate to call.

Very truly yours,

Pope, McGlamry, Kilpatrick, Morrison & Norwood, LLP

By: _____
    Alan G. Snipes
    Counsel for AFC Enterprises, Inc.

**EXHIBIT**
**2**

POPE, MCGLAMRY, KILPATRICK, MORRISON & NORWOOD, LLP

Ms. Frances Crusoe
March 6, 2009
Page 2


AGS/jf
cc:    Phillip Wittmann, Esq.

## Complaints and Other Initiating Documents

1:09-cv-00416-WSD AFC Enterprises, Inc. v. Diversified Foods and Seasonings, Inc.

4months

### U.S. District Court

### Northern District of Georgia

## Notice of Electronic Filing

The following transaction was entered by Snipes, Alan on 3/6/2009 at 4:26 PM EST and filed on 3/6/2009

**Case Name:**        AFC Enterprises, Inc. v. Diversified Foods and Seasonings, Inc.

**Case Number:**      1:09-cv-416

**Filer:**            AFC Enterprises, Inc.

**Document Number:** 7

**Docket Text:**
**First AMENDED COMPLAINT *for Declaratory Judgment* against Diversified Foods and Seasonings, Inc., filed by AFC Enterprises, Inc.. (Attachments: # (1) Ex. 1, # (2) Ex. 2) (Snipes, Alan) Please visit our website at http://www.gand.uscourts.gov to obtain Pretrial Instructions.**

**1:09-cv-416 Notice has been electronically mailed to:**

Alan G. Snipes      efile@pmkm.com, alansnipes@pmkm.com

Charles Neal Pope      efile@pmkm.com

George W. Walker , III      walker@copelandfranco.com

Jay Forbes Hirsch      efile@pmkm.com, jayhirsch@pmkm.com

Richard H. Gill      gill@copelandfranco.com

**1:09-cv-416 Notice has been delivered by other means to:**

The following document(s) are associated with this transaction:

**Document description:** Main Document
**Original filename:** n/a
**Electronic document Stamp:**
[STAMP dcecfStamp_ID=1060868753 [Date=3/6/2009] [FileNumber=2921606-0]

[0cdddf9b6495024750bc742e57fb069b32b625283dfdd62aefc2ea16c4584abb1e88
e18b9cc3dfce14d64c7183fe8d72163053f35f5889959986db82cc1dccb6]]
**Document description:** Ex. 1
**Original filename:**n/a
**Electronic document Stamp:**
[STAMP dcecfStamp_ID=1060868753 [Date=3/6/2009] [FileNumber=2921606-1]
[5612de4be11f6de5d8143e3833ec44d99a4517e503d6f0e7d71f9a1e8c3fb62c1390
3c162184462a49df04efeb7b180121843f101812cabcb9448335b330b574]]
**Document description:** Ex. 2
**Original filename:**n/a
**Electronic document Stamp:**
[STAMP dcecfStamp_ID=1060868753 [Date=3/6/2009] [FileNumber=2921606-2]
[806f9ad4632ff59454773f07dd5b758f45efe5a8d1f25071e8c75a3b0490880ee721
a90b3d142cd743bc0fb020d0bce76683ca78ce9d721abebb40f10885f943]]