UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **DIVERSIFIED FOODS AND SEASONINGS, INC.** | **CIVIL ACTION** |
| **VERSUS** | **NO: 09-2998 c/w 09-3529** |
| **AFC ENTERPRISES, INC.** | **SECTION: "C" (3)** |

## ORDER AND REASONS

Before the Court is a Motion for Review of Magistrate's Order and a Motion for Partial Summary Judgment by Diversified Foods and Seasonings, Inc., ("Diversified") (Rec. Docs. 63, 70) and a Motion for Continuance in Accordance with Fed. R. Civ. P. 56(f) by AFC Enterprises, Inc. ("AFC"). The motions are before the Court on the briefs without oral argument. Having considered the memoranda of counsel, the record, and the applicable law, the Court DENIES Diversified's Motion for Summary Judgment and DENIES its Motion for Review of Magistrate's Order. AFC's Motion to Continue is MOOT.

## I. Background

Diversified is a supplier and manufacturer of spices, seasonings, batters, breading, cooked products, and related food stuffs. AFC owns and operates the Popeyes Chicken and Biscuits restaurant chain. On March 21, 1989, the predecessors in interest of AFC and Diversified entered into a requirements contract ("the Supply Contract"). The Supply Contract

included the following provisions:

> I. [Diversified] shall sell to [AFC], or as [AFC] directs, all of the Product required by [AFC], and [AFC] shall purchase its requirements for the consideration hereafter stated.
> IV. Prices for the Product shall be as quoted or posted from time to time by [Diversified] consistent with past practices, shall be payable C.O.D. or on such other basis as shall be mutually determined, and shall be uniform throughout the Popeyes Famous Fried Chicken and Biscuit system.

(Rec. Doc. 70-3 at 2-3). AFC's predecessor in interest, Al Copeland Enterprises, Inc., filed for bankruptcy in 1991. Among the issues in the instant litigation is whether a Supplemental Disclosure filed in conjunction with the Plan of Reorganization altered the terms of the Supply Agreement. The relevant portion of the Supplemental Disclosure reads:

> While [Canadian Imperial Bank of Commerce, as agents for proponents of reorganization] believes that substantial legal questions exist as to the appropriate scope of the "Product" covered by the Supply Contract, in order to avoid further potential disputes it is the New Company's [AFC] intention for the term of the Supply Contract (i.e., until it terminates on March 21, 2004), to continue purchasing from Diversified, and in effect directing its Popeyes franchisees to purchase from Diversified, all of its requirements for products from Popeyes restaurants as listed in Exhibit A hereto (including any modification or improvements thereto) that are prepared with formulas or recipes which are the subject of the Formula Agreement, as amended. This assumes that Diversified will comply with its obligations under the Supply Contract and will provide high quality products in sufficient quantity and at prices that are fair and reasonable.

(Rec. Doc. 1-5 to consolidated case 09-3529 at 3-4). The Bankruptcy Court affirmed the amended disclosure plan. The parties, via two separate settlement agreement, subsequently reaffirmed the Supply Agreement and extended its term until March 20, 2029.

This case was originally brought by AFC in Northern District of Georgia as a complaint for declaratory judgment, alleging that Diversified breached its obligations under the Supply Contract by failing to provide fair and reasonable prices. That case was later consolidated with the above captioned case, which began as Diversified's own complaint for declaratory judgment

2

concerning its obligations under the Supply Contract and the Supplemental Disclosure.

AFC has sought to compel Diversified to produce what Diversified characterizes as "confidential, proprietary, and trade secret information" (Rec. Doc. 70-2 at 5). Diversified argues that the information sought is not relevant in light of its interpretation of the contract. On January 6, 2010, Magistrate Judge Knowles ruled that Diversified must comply with AFC's discovery requests. (Rec. Doc. 58). The Court stayed Judge Knowles's order pending the outcome of the instant motions. (Rec. Doc. 74).

**II. Law and Analysis**

*a. Standard of Review*

Summary judgment is only proper when the record indicates that there is not a "genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56. A genuine issue of fact exists only if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc*. 477 U.S. 242, 247-48 (1986); *see also, Taita Chem. Co. v. Westlake Styrene Corp*., 246 F.3d 377, 385 (5th Cir. 2001). When considering a motion for summary judgment, this Court "will review the facts drawing all inferences most favorable to the party opposing the motion." *Reid v. State Farm Mut. Auto Ins. Co.*, 784 F.2d 577, 578 (5th Cir. 1986).

The party moving for summary judgment bears the initial burden of "informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party has met its initial burden, however, "the

burden shifts to the non-moving party to produce evidence or designate specific facts showing the existence of a genuine issue for trial." *Engstrom v. First Nat'l Bank of Eagle Lake*, 47 F.3d 1459, 1462 (5th Cir. 1995). In order to satisfy its burden, the non-moving party must put forth competent evidence and cannot rely on "unsubstantiated assertions" and "conclusory allegations." *See Hopper v. Frank*, 16 F.3d 92 (5th Cir. 1994); *Lujan v. Nat'l. Wildlife Fed'n.*, 497 U.S. 871, 871-73 (1990); *Donaghey v. Ocean Drilling & Exploration Co.*, 974 F.2d 646, 649 (5th Cir. 1992).

Diversified argues 1) that the only provisions in the Supply Contract with respect to pricing are set forth in Section IV of the Supply Contract, and 2)that it is not required to disclose its costs, revenues, margins, or profits to AFC. (Rec. Doc. 70-2 at 1). The second question is the same issue addressed by Magistrate Judge Knowles, and its resolution on summary judgment also resolves the motion for review of his ruling.

 *b. Pricing Provisions*

Louisiana Civil Code Article 2464 reads:

> The price must be fixed by the parties in a sum either certain or determinable through a method agreed by them. There is no sale unless the parties intended that a price be paid.
> The price must not be out of all proportion with the value of the thing sold. Thus, the sale of a plantation for a dollar is not a sale, though it may be a donation in disguise.

Diversified argues that the contract terms are "clear and unambiguous" and that therefore summary judgment is warranted. (Rec. Doc. 70-2 at 8). Per the contract, Diversified is to provide prices "as quoted or posted from time to time by [Diversified] consistent with past practices." (Rec. Doc. 70-2 at 9). Diversified argues that the parties have established pricing at a sum "determinable through a method agreed by them," La. Civ. Code art. 2464, wherein

4

"Diversified sends invoices that explicitly state the prices for its products" and "AFC and/or its franchisees pay the rates for the products." (Rec. Doc. 70-2).

Under Louisiana law, the price term in a contract must be objectively determinable. *T.B. Guillory, Inc. v. North American Gaming Entertainment Corporation*, 741 So.2d 44, 47-48 (La.App. 1999) (price agreed by future negotiation not sufficiently certain and determinable to find valid option); *Directional Wireline Services, Inc. v. Tillet*, 552 So.2d 1201, 1214 (La.App. 1989) (no meeting of the minds as to the proper method for calculating "book value" of corporate stock, so sale not valid); *Princeville Canning Company v. Hamilton*, 159 So.2d 14, 18-19 (La.App. 1963) (where no objective method for determining price provided, contract was so indefinite as to price to be null and void). *Cf. Horizon Security and Vault Complex v. BFI Waste Systems of North America*, 2003 WL 22872097 at *1-2 (E.D.La. 2003) (where contract provided that seller could increase prices for any reason with buyer's consent, buyer consented to increased prices by payment and prices were not overcharges).

Diversified admits that in this case the contract on its own is insufficient to ascertain the full meaning of past practices: "As with any index, the nature of the 'past practices' must be determined –but are indeed determinable – by reference to evidence outside the contract – that is, evidence about the nature of the parties' 'past practices,' which unfortunately is not the discovery AFC has targeted to date." (Rec. Doc. 91-2 at 8 n.7). Diversified's attempts to assure the Court that those practices establish an objectively determinable price fall short. A "decades long course of conduct" of sending bills and receiving payment establishes only that the parties had a workable method of payment. (Rec. Doc. 70-2 at 16). It does nothing to demonstrate how Diversified arrived at the amount billed.

5

Possibly, the past practices of the parties establish an objectively determinable price. *See Total Minatome Corporation v. Union Texas Products Corp*, 766 So.2d 685, 691 (La.App. 2000) ("[t]he observation of the manner and consistency in which the contract was performed over the years is of particular assistance in determining intent"). That evidence is not before the court. Without that information, the Court agrees with AFC that summary judgment is premature. If further discovery reveals an objectively determinable pricing plan, then the Court, and AFC, would have no need to look beyond the Supply Contract for pricing terms. As such, Diversified's Motion for Partial Summary Judgment is DISMISSED without prejudice. AFC's Motion to Continue is MOOT.

However, in the event that such discovery does not reveal an objectively determinable pricing method, the Court agrees with AFC that it should supply a "reasonable price" term in the contract. *See* La. Civ. Code Ann. art. 2466 ("When the thing sold is a movable of the kind that the seller habitually sells and the parties said nothing about the price, or left it to be agreed later and they fail to agree, the price is a reasonable price at the time and place of delivery"); *Benglis Sash & Door Co. v. A.P. Leonards*, 387 So.2d 1171, 1172-73 (La. 1980) (from history of dealings between the parties, court could infer consent to reasonable price). In the alternative, it is possible that the Supply Contract is void for failure of the parties to reach a meeting of the minds as to the price term. *See Conkling v. Turner*, 18 F.3d 1258, 1301-02 (5th Cir. 1994) (parties must agree to some ascertainable method to arrive at that price in order to have a binding contract of sale under Louisiana law). This question is not currently before the Court, and has not been fully briefed by the parties.

  *c. Discovery Dispute*

Diversified argued before Magistrate Judge Knowles and now argues before this Court that AFC's discovery requests are irrelevant.

Specifically, Diversified objects to the following topics of information:

1. Food product pricing strategies, methods, and/or calculations.

2. The Definition of "margin," calculation of margin, and/or analysis of margin.

3. Price components and/or inputs to pricing decisions.

4. Annual sales, costs, revenues and profits.

5. The cost per pound for each ingredient.

6. Formula based pricing.

(Rec. Doc. 63-2 at 6-7). They also object to other "issues that fall outside of the actual terms of the Supply Contract" such as "information relating to fat and salt content [and] compliance with export and import regulations." (Rec. Doc. 63-2 at 7). Diversified characterizes this information as "confidential, proprietary, trade secret, commercial information" (Rec. Doc. 63-2) and assert that the Supply Contract was designed to specifically avoid divulging this information. They argue that AFC is attempting to position itself as a competitor to Diversified, and that the requested information could therefore damage its business interests. (Rec. Doc. 63-2 at 8).

Procedurally, Diversified argues that because it has requested declaratory relief regarding its obligation to disclose information during the course of this litigation, what would otherwise be a discovery dispute is appropriately before the Court on their motion for summary judgment. They conclude that the magistrate's decision was an inappropriate decision on the merits of their request for declaratory relief. (Rec. Doc. 63-2 at 16-17).

AFC argues that the requested information is relevant for two purposes: 1) establishing

the parties' past practices in regard to pricing and, possibly, whether those practices were "fair and reasonable"; and 2) assessing Diversified's counterclaim for damages. They further note that the requested information is subject to a protective order, so Diversified's fears regarding its proprietary information should be minimal.

Magistrate Judge Knowles found the above information relevant based on a review of the parties' allegations. Diversified argues that Judge Knowles should have reviewed the Supply Contract, not just the allegations, before determining that the above information is relevant. However, because the Court has interpreted the Supply Contract, those arguments are now moot.

Diversified argues that it can establish the parties' "past practices" without providing the requested information. It points to the fact that it has:

> [P]roduced or identified over 2000 pages of documents that include include: (1) standard industry price indexes for products covered by the Supply Contract over the last ten years; (2) Popeyes' Historical Pricing Information spreadsheets, detailing ten years of pricing information for products covered by the Supply Contract; (3) documents relating to Diversified's past practices for determining, setting, and quoting prices for products covered by the Supply Contract; (4) documents evidencing changes, including increases, in the prices charged by Diversified for products covered by the Supply Contract; (5) documents identifying seasonings and other food products covered by the Supply Contract; and (6) names and contact information for all persons involved in or with direct personal knowledge of Diversified's past practices for setting prices for products covered by the Supply Contract.

(Rec. Doc. 90-2 at 6 n.3). However, the Court held above that in the absence of objectively determinable past practices, the reasonableness of Diversified's prices might be relevant to the outcome of this dispute. Therefore, AFC's discovery requests could lead to admissible evidence on this topic. The Court agrees with Magistrate Judge Knowles that Diversified must provide the requested information. Diversified's Motion for Summary Judgment as to the discovery

8

disclosures is DENIED.  The Motion to Review the Magistrate's Order is likewise DENIED.

Accordingly,

IT IS ORDERED that Diversified's Motion for Summary Judgment is DENIED, its Motion for Review of Magistrate's Order is DENIED, and AFC's Motion to Continue is MOOT. Diversified will comply with the Order compelling discovery within two working days

New Orleans, Louisiana, this 1st day of June, 2010.

_____
**HELEN G. BERRIGAN**
**UNITED STATES DISTRICT JUDGE**